## TOWSLEY *vs.* McDONALD.

Requisites of the affidavit on which an order for the publication of a summons is applied for.

The affidavit must not only show the existence of a cause of action, and that the defendant cannot, after due effort and diligence, be found within the state, but it must further appear, when the application is under subdivision 2 of section 135 of the code, that being a resident of the state, the defendant has departed therefrom with intent to defraud his creditors or to avoid the service of a summons, or keeps himself concealed therein with the like intent.

To establish an intent to defraud creditors, the affidavit must show that the defendant has property, of some kind, and that he has made or is about to make, a fraudulent or illegal disposition of it; or that he unjustly refuses to apply it to the payment of his debts; or has secreted or removed, or is about to secrete or remove it; or has fraudulently incumbered it.

To authorize an order for publication on the ground of a departure from the state, by the defendant, with intent to avoid the service of a summons, the affidavit must furnish proof of such intent.

Where it did not appear, from the affidavit, that any summons was out against the defendant, when he left the state; or that any was about to be issued against him; or that he was threatened with, or feared, or expected a suit; and there was nothing stated therein from which it could be seen or fairly inferred that he had any intent either to defraud creditors, or to avoid the service of a summons; *Held* that the affidavit was defective, and an order for publication, founded thereon, unauthorized and void.

Where an order for the publication of a summons is granted under subdivision ·

Towsley *v.* McDonald.

2 of section 135 of the code, which presupposes that the debtor is a resident of the state, but has departed therefrom, or kept himself concealed therein, and it also appears from the affidavit that he is a resident of a particular place in this state, the order must direct service of the summons and complaint to be made upon the defendant by mail.

If an order for the publication of a summons is granted upon an insufficient affidavit, and does not direct service of the summons and complaint to be made by mail, in a proper case for such a service, the court acquires no jurisdiction of the case, and a judgment entered therein is void.

B., the owner of land, contracted with M. to convey the same to him, on being paid the sum of $160, and M. went into possession, under the contract. The contract was subsequently assigned by B. to C. to secure the payment of an antecedent debt; *Held* that after the execution of the contract B. was, in equity, the trustee of the legal title for M., and M. the trustee of B. as to the unpaid purchase money. That this relation continued until B. assigned the contract to C.; after which time M. was the trustee of C. as to such unpaid purchase money; and B.'s position was that of a mere naked trustee of the legal title, with no right or interest in the land, on which a lien by judgment could attach.

*Held, also,* that C. had a right to take an assignment of the contract, in payment or as security for an antecedent debt due from B.; and that such debt was a sufficient consideration to constitute him a *bona fide* purchaser, as against the claims of other creditors of B.

THIS action was brought for the recovery of real property. The premises in controversy were conveyed to George T. Benham, May 7, 1853. In 1855, Benham contracted with the defendant to convey to him the premises, on being paid $160, and the defendant went into possession under this contract. About January 1, 1856, Benham absconded, leaving the defendant in possession under the contract of purchase, on which he had paid only the sum of $43.97.

In January, 1856, the plaintiff commenced an action against Benham, in the supreme court, by the issuing of a summons which the sheriff returned, with his return dated January 15, 1856, stating that he had used due diligence to find Benham, and that the latter could not be found in his county. Thereupon, and on the 16th January, the plaintiff obtained an order for the service of the summons by publication, under section 135 of the code of procedure. Proceedings were taken in that action, resulting in a judgment against Benham

for $157.93, entered May 1, 1856. Benham did not appear in the action. An execution was issued on the judgment, under which the premises in controversy were sold on the 16th August, the plaintiff being the purchaser. On the 10th December, 1857, the sheriff conveyed to the plaintiff pursuant to this sale. In April following this action was commenced.

The contract of purchase between Benham and the defendant was made August 28th, 1855. This contract was assigned by Benham to S. W. Codman, March 17th, 1856, and the plaintiff had notice of the assignment about the 25th of the same month. Benham had been previously paid $43.97 by McDonald, and the balance due upon the contract he paid to Codman as follows : $16.03, August 6th, 1856 ; $64, October 2d, 1857 ; and $53.50, December 14th, 1857.

The defendant resisted the recovery, on the following grounds : 1st. That the judgment in favor of the plaintiff against Benham was void for want of jurisdiction. 2d. That even if the judgment was valid, the plaintiff acquired, by the sheriff's sale, only the legal title to the premises, subject to the equitable rights of other parties under the contract of purchase between Benham and the defendant ; that those equitable rights embraced the entire property, inasmuch as the defendant had a right to a conveyance on paying the balance of the purchase price, according to the terms of the contract, and Codman had a right to demand and receive payment, he being the assignee of the claim, before the judgment lien attached.

The plaintiff had judgment for the possession of the premises unless the defendant should elect to pay him the balance due on the contract of purchase at the date of the entry of judgment, with costs of the action ; from which judgment the defendant appealed to the general term.

*Pond & Hand,* for the appellant.

*S. Brown,* for the respondant.

*By the Court,* BOCKES, J.   It is objected that the judgment against Benham was void for want of jurisdiction.   The objection is based on the alleged insufficiency of the affidavit on which the order for publication of the summons was granted—and on the omission in the order to direct a copy of the summons and complaint to be deposited in the post office, directed to the person to be served, at his place of residence.

Section 135 of the code of procedure provides for the service of a summons by publication, when it shall be made to appear, by affidavit, to the satisfaction of the court or officer, that the person on whom the service is to be made cannot, after due diligence, be found within the state ; that a cause of action exists against the defendant in respect to whom the service is to be made ; and when it shall also be made further to appear, (under sub. 2,) that the defendant, being a resident of this state, has departed therefrom with intent to defraud his creditors, or to avoid the service of a summons, or keeps himself concealed therein with like intent.

The affidavit shows clearly the existence of a cause of action, and that the defendant Benham could not, after due effort and diligence, be found within the state.   But other facts must yet be established before the court or officer is authorized to make the order.   It must further appear, when the application is under subdivision 2, that, being a resident of the state, he has departed therefrom with intent to defraud his creditors, or to avoid the service of a summons, or keeps himself concealed therein with the like intent.

The affidavit, which was made July 15th, 1856, stated, that he was a resident of Chester, Warren county, during the years 1853, 1854 and 1855, and disappeared from the neighborhood about the 1st of January, 1856, leaving his family at his late residence ; that he had not since returned ; that the affiant, the plaintiff, had made inquiry for him and had been informed that he had been in Vermont, and had left there for the west ; that the affiant was informed by the wife of the defendant that she did not know where he was ; that

he took a change of clothes ; that she did not know of his intention to go away, but thought he would not return ; that he drank hard, and told her a few days before he left, that he could not pay his debts; that George W. Glynn informed affiant that the defendant had said to a friend that he was intending to run away and had made preparations to go, and had once actually started.

From all this it may well be inferred that he was a resident of the state, but had departed therefrom, or kept himself concealed therein. It remains now to be seen whether there is any evidence that such departure or concealment was with the intent either to defraud his creditors, or to avoid the service of a summons.

The affidavit does not show that he had it in his power to perpetrate a fraud on his creditors. It does not appear that he had any property whatever. (*See Stanbro* v. *Hopkins,* 28 *Barb.* 266.) To establish an intent to defraud creditors, it was necessary to show that he had property of some kind ; and that he had made or was about to make a fraudulent or illegal disposition of it; or that he unjustly refused to apply it to the payment of his debts; or had secreted or removed, or was about to secrete or remove it; or had fraudulently incumbered it.

Nor is there any proof whatever of an intent to avoid the service of a summons. It does not appear that any summons was out against him when he left; or that any was about to be issued against him; or that he was threatened with, or feared, or expected a suit. Indeed nothing whatever is stated in the affidavit from which it can be seen or fairly inferred, that he had any intent either to defraud creditors or to avoid the service of a summons.

The case does not present a question on the sufficiency of the proof merely, calling for the exercise of discretion and judgment in regard to the intent of the debtor; but there is a total absence of proof on that subject, (3 *Comst.* 47,

*and cases cited.*)    The order was therefore unauthorized and void:.

The order too is fatally defective, in not directing service of the summons and complaint on the defendant, by mail. The code (§ 135) provides that in case of publication, the court or judge must also direct a copy of the summons and complaint to be forthwith deposited in the post office, directed to the person to be served, at his place of residence, unless it appear that such residence is neither known to the party making the application, nor can with reasonable diligence be ascertained by him.

In the case under consideration, the order was granted under subdivision 2 of section 135, which presupposes that the debtor is a resident of the state, but had departed therefrom, or kept himself concealed therein.

To authorize the granting of the order, under subdivision 2, it was necessary to show that the debtor was a resident of this state; and it has been above determined that the affidavit was sufficient to show that fact, but was defective only on the subject of *intent.*   It shows very clearly that his residence was Chester, Warren county, and that he had departed therefrom.   It cannot be said therefore that his residence was unknown to the party making the application for the order.

Subdivision 2 was intended to reach a case where the debtor had departed from his residence in this state into another state, or concealed himself in this state.

Assume it to appear that he had changed his residence into another state, or that his residence was unknown, and the application for the order under subdivision 2, is clearly without support.   But the affidavit, in my judgment, establishes the fact of his " being a resident of this state," at Chester, Warren county.   It is averred that during the years 1853, 1854 and 1855, he was a resident of the town of Chester, that he departed therefrom about the 1st of January, 1856, sixteen days before the making of the application for the order, leaving his family at his usual residence, where they still re-

mained. It would seem impossible to say that he was a res- ident of the state on the 16th January, judging from the facts alleged in the affidavit, unless it be that his residence was at Chester. Indeed, it appeared that he was a resident of Chester, or it did not appear that he was a resident of this state.

If it appeared that he was not a resident of the state, the order was unauthorized under subdivision 2 of section 135 of the code; and if it appeared that he was a resident of this state, it further appeared that he was a resident of Chester, and then the order was defective in not directing service of the summons and complaint by mail.

It follows from the above conclusions that the judgment against Benham was without jurisdiction and void; and of course the plaintiff obtained no title to the premises by his purchase under it.

But even if the judgment against Benham be deemed valid, there still remains a difficulty in the way of a recovery in this action.

The judgment was not recovered against Benham until May 1, 1856; at which time Benham had no interest in the premises on which the judgment could take effect as a lien.

After August 20, 1855, the date of the contract between Benham and the defendant, Benham was in equity the trus- tee of the legal title for the defendant, and the defendant the trustee of Benham as to the unpaid purchase money. This relation continued until Benham assigned the contract to Codman, March 17, 1856; and after this assignment the de- fendant was the trustee of Codman as to such unpaid pur- chase price, and Benham's position was that of mere naked trustee of the legal title, with no right or interest in the lands on which a lien by judgment could attach. So long as he had a right to any part of the purchase money and continued to hold the legal title, a judgment against him would attach to the extent of such right. (*Moyer* v. *Hinman,* 3 *Kernan,* 180. *See cases cited in opinion of Hand, J., page* 190.) Chancellor Walworth remarks in *Keirsted* v. *Avery,* (4

Towsley *v.* McDonald.

*Paige,* 9, *on page* 15,) "It is now well settled that a judgment lien, being merely a general lien on the land of the debtor, is subject to every equity which existed against the land in the hands of the judgment debtor at the time of the docketing of the judgment. And the court of chancery will protect the equitable rights of third persons against the legal lien, and will limit that lien to the actual interest which the judgment debtor has in the estate."

At the time the judgment was recovered, Benham had no right whatever in the premises. After his assignment of the contract to Codman, on the 17th March, 1856, no right or equity remained to him under it, and of course the plaintiff could acquire none by virtue of the judgment and execution sale. Codman was entitled to demand and receive the balance of the unpaid purchase price from the defendant; and although Benham retained the legal title, still the equitable title was in another. It was held, in *Ells* v. *Towsley,* (1 *Paige,* 280,) that the lien of a judgment does not, in equity, attach upon the mere legal title to land existing in the defendant, when the equitable title is in a third person.

The case was decided at the circuit, on the ground that the plaintiff held a superior equity over Codman, inasmuch as Codman received the assignment of the contract in payment, or as security, for an antecedent debt. But, for aught that appears from the case, Codman paid a good and valuable, if not a full consideration, for the contract. He had a right to take it in payment or as security for an antecedent debt, and such debt would be a sufficient consideration to constitute him a *bona fide* purchaser. This is expressly decided in *Seymour* v. *Wilson,* (19 *N. Y. R.* 417, 421.) It is there said, that when the transfer is to a *creditor* of the vendor, it is not necessary that the vendee, in order to protect himself from a claim by other creditors, should show any new consideration paid; that in such case the debt paid or secured by the transfer, is a sufficient consideration to constitute him a *bona fide* purchaser.

The question, whether the assignment of the contract by Benham to Codman was made with intent to hinder, delay · or defraud the creditors of Benham, and hence void, was not considered below, and hence need not be discussed on this appeal, if, indeed, it could arise in the case.

Judgment reversed and new trial ordered; costs to abide the event.

[St. Lawrence General Term, October 3, 1860. *James, Rosekrans, Potter* and *Bockes*, Justices.]

