THE LAFAYETTE TRUST COMPANY, Respondent, *v.* JAMES BEGGS, Appellant.

Banking Law — effect of act of superintendent of banks in taking possession of property, assets and business of insolvent trust company — when equitable title to property has vested in superintendent such title is superior to subsequent judgments against trust company.

The superintendent of banks took possession of the property, business and assets of the plaintiff, pursuant to section 19 of the Banking Law (Cons. Laws, ch. 2) and continued in possession for the purpose of liquidating its affairs in accordance therewith. Subsequently judgments for the payment of money were recovered against the plaintiff and docketed in the county in which certain real estate of plaintiff is situated. *Held*, that the equitable title to such real estate having vested in the superintendent of banks at the time that he took possession of the property of the plaintiff, which act antedated the recovery of the judgments against it, the title in the superintendent was superior to the judgments, which were not liens upon said property under section 1251 of the Code of Civil Procedure, as the liens therein specified are confined to the real property and chattels real *which the judgment debtor has at the time of docketing the judgment.* (Banking Law, § 19.)

*Lafayette Trust Co.* v. *Beggs,* 163 App. Div. 959, affirmed.

(Submitted October 19, 1914; decided January 5, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered August 3, 1914, in favor of plaintiff, upon the submission of a controversy under section 1279 of the Code of Civil Procedure.

The nature of the controversy and the facts, so far as material, are stated in the opinion.

*Francis J. MacIntyre* for appellant. The deed tendered will not convey a marketable title to the defendant free from the lien of judgments docketed after the superintendent took possession of the bank. (L. 1909, ch. 10, § 19; *Lafayette Trust Co.* v. *Higginbotham,* 136 App. Div. 747.)

*George A. Blauvelt* for respondent. The judgments recovered and docketed against the plaintiff after the superintendent of banks took possession are not valid liens upon its property and do not render the title thereto unmarketable. (*People* v. *American L. & T. Co.*, 177 N. Y. 231; *Matter of Attorney-General* v. *Atlantic Mut. Life Ins. Co.*, 100 N. Y. 279; *Matter of Union Bank*, 204 N. Y. 313; *Northern Bank* v. *Drury*, 152 App. Div. 64; *Matter of Carnegie Trust Co.*, 161 App. Div. 200.)

HOGAN, J. The facts submitted by the respective parties, briefly stated, were: "That on the 30th day of November, 1908, the superintendent of banks took possession of the property, business and assets of the plaintiff, pursuant to section 19 of the Banking Law, and since said date the superintendent of banks has continued in possession of the plaintiff as aforesaid for the purpose of liquidating its affairs in accordance with section 19 of the Banking Law."

That on the 30th day of November, 1908, plaintiff was the owner of a certain parcel of land in the borough of Brooklyn. On December 6th, 1912, the superintendent of banks in the name of the plaintiff, entered into an instrument in writing with the defendant in and by the terms of which plaintiff agreed to sell to the defendant the property referred to, free from incumbrances, and the defendant contracted to purchase the property subject to the approval of the contract by the Supreme Court, to be evidenced by an order of the court to be obtained upon application by the superintendent of banks. Such order was obtained by the superintendent of banks on the 10th day of January, 1913, wherein the contract of sale was approved and the superintendent of banks was directed to execute and deliver on behalf of the plaintiff a conveyance of the premises.

Subsequent to the taking possession of the property and business of the plaintiff by the superintendent of banks,

and prior to the third day of February, 1913, certain judgments for the payment of money were recovered against the plaintiff and docketed in the county of Kings, in which the property contracted to be conveyed is situated.

On the 3rd day of February, 1913, the superintendent of banks tendered to the defendant a deed of the premises in accordance with the terms of the contract and the order of the court approving the same, which the defendant refused to accept, and the question of law presented upon the controversy was whether or not the deed tendered would convey a marketable title to the premises free from all incumbrances.

Section 19 of the Banking Law is extremely voluminous. So far as material to be considered here it authorized the superintendent of banks to take possession of the property and business of the plaintiff whenever it appeared to that officer that the corporation (1) had violated its charter or any law of the state, or (2) was conducting its business in an unsafe or unauthorized manner, or (3) if the capital of such corporation was impaired, or (4) if such corporation refused to submit its books, papers and affairs to the inspection of any examiner, or (5) if any officer thereof should refuse to be examined upon oath touching the concerns of the corporation, or (6) if such corporation had suspended payment of its obligations, or (7) if from any examination or report made the superintendent should conclude that the corporation was in an unsound or unsafe condition to transact business, or (8) that it was unsafe and inexpedient for the corporation to continue business, or (9) if the corporation refused to observe an order of the superintendent made under section 17 of the Banking Law to make good a deficiency in the capital stock within the time therein referred to. The superintendent was authorized to retain such possession until the corporation should resume business or its affairs be finally liquidated as provided in said section.

The section made provision with reference to the

resumption of business by the corporation, providing, *first*, such resumption might be made upon such conditions as may be approved by the superintendent; *secondly*, after the superintendent had taken possession, if the corporation deemed itself aggrieved thereby, it might at any time within ten days apply to the Supreme Court to enjoin further proceedings by the superintendent, and said court after citing the superintendent to show cause why further proceedings should not be enjoined, and hearing the allegations and proofs of the parties, and determining the facts, was authorized upon the merits to dismiss the application or to enjoin the superintendent from further proceedings and direct him to surrender the business and property to the corporation. Provision was also made with reference to liquidation after payment of all claims; such final liquidation was to be by the stockholders if they should so determine.

The fact that the superintendent of banks in November, 1908, took possession of the property and business of the plaintiff, pursuant to this section of the Banking Law, *since which time he has continued in possession of the same for the purpose of liquidating its affairs*, negatives a consent by the superintendent to a resumption of business by the plaintiff; or the grant of an order of the court permitting the plaintiff to resume its corporate business.

The word "liquidation" is susceptible of but one meaning when construed in connection with the language of the Banking Law, and the circumstances to which it was intended to apply. The agreement of the parties that the superintendent took charge of the affairs of the corporation for the purpose of "*liquidating*" its affairs, necessarily excludes his possession for any other purpose. The word "liquidation" is synonymous with "winding up or settlement with creditors." In its general sense it means "the act or operation of winding up the affairs of a firm or company by getting in the assets, settling with

its debtors and creditors, and appropriating the amount of profit or loss." (*Matter of Silkman,* 121 App. Div. 202, 206, 207; affirmed, 190 N. Y. 560; *Assets Realization Company* v. *Howard,* 70 Misc. Rep. 651; affirmed, 152 App. Div. 900; 211 N. Y. 430.)

Immediately when the superintendent took possession of the property and business of the trust company under the Banking Law and commenced a liquidation of its business on November 30th, 1908, the right of plaintiff to exercise the incidental powers necessary to carry on the business of the trust company was superseded. The superintendent of banks, having been continuously engaged in liquidating the business of plaintiff, it could not, since his possession, receive or pay out moneys or prosecute the business for which it was organized. As a legal entity it continued to exist, but it could not exercise its powers as a corporation. It was deprived of the possession of its property as effectively as though a receiver of the same had been appointed by the court and title to its property was vested in the officer designated in the statute, to wit, the superintendent of banks, for the purposes of liquidation and an equitable and ratable distribution of assets among creditors.

That the superintendent of banks is clothed with all of the powers and duties of a receiver is apparent from an examination of the statute. It provides that on taking possession of the property and business notice of such fact is to be given by the superintendent to any and all banks, trust companies, associations and individuals, holding or in possession of any assets of the corporation, and no bank, trust company, association or individual so notified or knowing of such taking possession shall have a lien or charge for any payment, advance or clearance thereafter made or liability thereafter incurred against any of the assets of the corporation in the possession of the superintendent. The superintendent is authorized to collect moneys due to the corporation, to do all acts necessary to

conserve its assets and business, to collect all claims belonging to it; upon order of the court to sell or compound bad or doubtful claims and on like order to sell real estate. If necessary to pay the debts of the corporation, the superintendent is authorized to enforce the individual liability of stockholders; to employ such assistants as may be necessary in the liquidation and distribution of the assets of the corporation; to retain officers or employees of the corporation as he may deem necessary; to cause notice to be given by advertisement for three consecutive months requiring all persons having claims against the corporation to present the same to him and make legal proof thereof within a time specified, and in addition to notify all persons whose names appear as creditors upon the books of the corporation to present claims. In case the superintendent shall doubt the justice or validity of any claim, he is authorized to reject the same and serve notice thereof. An action upon a claim so rejected must be commenced within six months after service of such notice of rejection. The superintendent is required to make an inventory of the assets of the corporation and at a specified time a full and complete list of the claims presented, including and specifying such claims as have been rejected, such lists to be filed as provided in said section. The moneys · collected by the superintendent are to be deposited in state banks of deposit, savings banks or trust companies, and in case of suspension or insolvency of the depositary such deposits are made preferred claims. The superintendent is authorized to declare dividends, and a final dividend to be paid to such persons and in such amounts and upon such notice as may be directed by the Supreme Court, and the court is authorized to make proper provision for unproved or unclaimed deposits.

In *Matter of Union Bank of Brooklyn* (204 N. Y. 313, 316) this court, Judge WERNER writing, having under consideration a construction of this section of the Banking Law, said:

"The events which led to its enactment are familiar history, of which we may take judicial notice. The financial depression of 1907, and the resulting embarrassment of many banks, culminated in a series of receiverships in which the demands for commissions and counsel fees were so extravagant as to arouse an instant popular demand for reform. To that end the superintendent of banks was by statute invested with the powers which had previously been exercised by receivers appointed by the courts. * * * The statutory enumeration of the superintendent's duties * *. * indicates the legislative intent to transfer to the superintendent the general duties and functions which had theretofore been exercised by receivers."

In *Van Tuyl* v. *Scharmann* (208 N. Y. 53, 63) this court, having under consideration the same section of the Banking Law, quoted the language of Judge WERNER, and added: "The scheme of the statute was to provide a procedure for the liquidation of delinquent corporations through a department of the state for the benefit of creditors, which would be economic and speedy."

When the superintendent of banks took possession and control of the assets of the plaintiff, the property of the trust company was "*in custodia legis*," and any interference with such property by plaintiff or any person would be a contempt punishable as such, for the rule is applicable to any receiver, sequestrator, committee or custodian of any name or nature. (*Noe* v. *Gibson*, 7 Paige's Chancery, 513; *Walling* v. *Miller*, 108 N. Y. 173.)

This conclusion is justified by a consideration of the duties imposed upon the superintendent by the provisions of the Banking Law to which reference has been made.

The statute contemplated in cases of liquidation an equitable and ratable distribution of the assets of the bank amongst its creditors through the order of the court, to be paid in the nature of dividends "to such persons and in such amounts and upon such notice as may be directed

by the court." An examination of the section clearly determines who are the "persons" referred to, viz., all persons appearing as creditors on the books of the bank, and persons who file claims pursuant to the notice published by the superintendent. The amount of the dividend to be paid must be fixed by the court from to time as the funds collected and applicable thereto will permit. The section of the Banking Law provided for the payment of preferred claims in so far as funds deposited in the trust company to the credit of the superintendent as liquidator of any other bank or company subject to the Banking Law. In all other cases where funds or property in possession of the company had not been obtained by fraud, the creditors of the company would share equally in the assets. The case of *Pringle* v. *Woolworth* (90 N. Y. 502) does not hold to the contrary.

Appellant urges that the judgments obtained against the plaintiff *subsequent to the taking possession of the property and business by the superintendent* are preserved as liens upon the real property of plaintiff by section 1251 of the Civil Code. Section 1251 of the Code of Civil Procedure, so far as material, is as follows: "* * * A judgment, hereafter rendered, which is docketed in a county clerk's office, as prescribed in this article, binds, and is a charge upon, for ten years after filing the judgment roll, and no longer, the real property and chattels real, in that county, *which the judgment debtor has at the time of so docketing it,* or which he acquires at any time afterwards, and within the ten years. * * *"

When the superintendent of banks assumed possession and control of the property and business of the plaintiff he became in equity the owner of the real estate then held by it. The only title which remained in the trust company was merely formal and was held in trust for the superintendent. (*Matter of Attorney-General* v. *Atlantic Mutual Life Ins. Co.,* 100 N. Y. 279; *Matter of*

**288** **LAFAYETTE TRUST CO. v. BEGGS.**

*Attorney-General* v. *Continental Life Ins. Co.*, 28 Hun, 360; affirmed, 93 N. Y. 630; *Crane* v. *O'Connor*, 4 Edwards Ch. 409; *Lounsbury* v. *Purdy*, 18 N. Y. 515; *Matter of Superintendent of Banks*, 207 N. Y. 11, 15.)

The equitable title to the real estate of the plaintiff having vested in the superintendent of banks at the time that he took possession of the property of the plaintiff, which antedated the recovery of any judgments against the plaintiff now sought to be established as liens upon its real estate, the title in the superintendent was superior to the judgments, which were not liens upon said property under section 1251 of the Code, as the liens therein specified are confined to the real property and chattels real *which the judgment debtor has at the time of docketing the judgment.*

The judgment should be affirmed, with costs.

MILLER, J. (concurring). I concur in the conclusion reached by my brother HOGAN. The lien of a judgment *perforce* of section 1251 of the Code of Civil Procedure takes effect only on the actual interest of the judgment debtor in the land and is, of course, subject to prior equities. (*Towsley* v. *McDonald*, 32 Barb. 604; *Moyer* v. *Hinman*, 13 N. Y. 180; *Trenton Banking Co.* v. *Duncan*, 86 N. Y. 221; *Brown* v. *Pierce*, 7 Wall. 205.) The statute contemplates that upon taking possession of a delinquent or insolvent bank, the superintendent "shall proceed to liquidate" its affairs unless either the bank, with the consent of the superintendent, is permitted to resume, or the Supreme Court enjoins further proceedings and directs the superintendent to surrender its business and property to it on its application made within ten days after such taking possession. The agreed fact in this case is that on November 30th, 1908, the superintendent took possession, and has since continued in possession, for the purpose of liquidating the affairs of the plaintiff. Judge WERNER, speaking for a majority of the

court in *Matter of Union Bank of Brooklyn*, (204 N. Y.
313, at page 317), said: "The plain theory of the statute
is that the superintendent shall not take possession of a
bank for purposes of liquidation until after he has made
an examination from which it appears that the conditions
warrant the exercise of the power." So the case is that
the possession of the superintendent from the start was
for the purpose of liquidation and was not intended to be
temporary merely. The question is whether under such
circumstances any equities arise superior to the lien of a
judgment subsequently docketed.

The statute makes no provision for enjoining creditors
from the commencement or prosecution of actions, but
does expressly provide that rejected claims, and claims to
which objections are sustained, must be established by a
judgment. If, after the superintendent has determined
to liquidate, creditors may gain a preference by obtaining
judgments, the scheme and purpose of the statute will
be frustrated. They may have their claims established
by judgment, but whether they will thus gain any priority
over other creditors is, as was said in *Pringle* v. *Wool-
worth* (90 N. Y. 502), "another and quite independent
question."

It is true the statute does not expressly provide for a
ratable distribution of assets among creditors, but such a
distribution being essential to the scheme is necessarily
implied. The statute is far from being a model, and it is
not our province to make a new statute, still I think its
provisions are workable, if effect be given to what is nec-
essarily implied as well as to what is written.

Whilst the corporation continues to exist, the ordinary
functions of its managers are suspended and the super-
intendent, as a liquidator, acts in its name and stead. It
may still sue and be sued and it retains the legal title to
its property; but by necessary implication, after a liquida-
tion has been determined upon, it holds the legal title

19

in trust for the beneficiaries of such liquidation. Its property becomes a trust fund to be distributed among all its creditors, whose equities are to be determined as of the date of the commencement of the liquidation.

I assume that the determination to liquidate must be evidenced by acts indicating that to be the purpose of the superintendent in taking or continuing possession. The express provision authorizing the superintendent to sell upon the order of the Supreme Court all the real and personal property of the corporation necessarily implies, to my mind, a sale free from the lien of judgments obtained subsequent to the actual commencement of liquidation. What would happen in the unusual case of a suspension of the liquidation and a resumption of business by the corporation is not now before us. It would not seem to be difficult in such case to impress a lien in favor of judgment creditors on the proceeds of sales of real property by the liquidator. Such a difficulty is theoretical, not real. A resumption of business by a bank having unpaid judgments against it is hardly to be expected.

A construction of the statute under which, after the actual commencement of liquidation, the bank is to retain the legal title to its property, but in trust only, and, therefore, not subject to the lien of judgments subsequently docketed, is necessary to give effect to the manifest intention of the legislature, and to make the statute workable. Under that construction no one will be harmed. If it turn out that the assets are more than sufficient to pay the debts all creditors will be paid in full. If it happen that there is a deficiency all will be treated alike, their equities will be determined as of the commencement of the liquidation, and no one will gain an unfair advantage by subsequently obtaining a judgment which the statute makes necessary to establish a claim if disputed.

The judgment should be affirmed.

COLLIN, J. (dissenting).   Since November 30, 1908, the superintendent of banks of the state has been in the possession of the property, business and assets, for the purpose of liquidating the affairs, of the plaintiff, a domestic banking corporation, pursuant to the provisions of section 19 of the Banking Law.   (Laws of 1892, ch. 689, § 18, as amended by Laws of 1908, ch. 143; Laws of 1909, ch. 10, § 19, as amended by Laws of 1910, ch. 452.)   On December 6, 1912, the superintendent of banks, in behalf and in the name of the plaintiff, and the defendant entered into a contract, subsequently approved by the Supreme Court, for the sale by plaintiff and purchase by defendant of lands owned by the plaintiff, the fee of which it was to convey, upon fulfillment by the defendant, free from all incumbrances.   The defendant refused upon a proper tender of the deed to fulfill the contract upon the ground that between the time at which the superintendent took possession of the plaintiff's property and the time of the tender of the deed certain money judgments were recovered against the plaintiff and docketed in the office of the clerk of Kings county, in which the lands are located. Otherwise, the lands and fee title are unincumbered.   The only question which the court is asked to determine is whether or not the deed tendered will convey a marketable title free from all incumbrances.

Originally section 19 was added to the Banking Law as section 18.   (Laws of 1908, ch. 143, § 3.)   In the Consolidated Laws it became section 19 of that law.   (Laws of 1909, ch. 10, § 19.)   It was amended by chapter 452 of the Laws of 1910, and, although the superintendent took possession of the property and business of the plaintiff in November, 1908, the effect of his possession depends upon its present provisions.   I will quote or refer to such parts only as seem to me to be relevant to the present question. It provides:

" Whenever it shall appear to the superintendent that any corporation or individual banker to which this chap-

ter is applicable has violated its charter or any law of the
state, or is conducting its business in an unsafe or unau-
thorized manner, or if the capital of any such corpora-
tion or individual banker is impaired, or if any such cor-
poration or individual banker shall refuse to submit its
books, papers and concerns to the inspection of any exam-
iner, or if any officer thereof shall refuse to be examined
upon oath touching the concerns of any such corporation
or individual banker, or if any such corporation or indi-
vidual banker shall suspend payment of its obligations,
or if from any examination or report provided for by this
chapter the superintendent shall have reason to conclude
that such corporation or individual banker is in an
unsound or unsafe condition to transact the business for
which it is organized, or that it is unsafe and inexpedient
for it to continue business, or if any such corporation or
individual banker shall neglect or refuse to observe an
order of the superintendent specified in section seventeen
of this chapter, the superintendent may forthwith take
possession of the property and business of such corpora-
tion or individual banker, and retain such possession until
such corporation or individual banker shall resume busi-
ness, or its affairs be finally liquidated as herein provided.
* * * Such corporation or individual banker may,
with the consent of the superintendent, resume business
upon such conditions as may be approved by him.   Upon
taking possession of the property and business of such
corporation or individual banker the superintendent is
authorized to collect moneys due to such corporation or
individual banker, and do such other acts as are necessary
to conserve its assets and business, and shall proceed to
liquidate the affairs thereof as hereinafter provided.   The
superintendent shall collect all debts due and claims
belonging to it, and upon the order of the supreme court
may sell or compound all bad or doubtful debts, and on
like order may sell all the real and personal property of
such corporation or individual banker on such terms as

the court shall direct; and may, if necessary to pay the debts of such corporation, enforce the individual liability of the stockholders. For the purpose of executing and performing any of the powers and duties hereby conferred upon him, the superintendent may, in the name of the delinquent corporation or individual banker, prosecute and defend any and all suits and other legal proceedings and may, in the name of the delinquent corporation or individual banker, execute, acknowledge and deliver any and all deeds, assignments, releases and other instruments necessary and proper to effectuate any sale of real or personal property or sale or compromise or compound authorized by the court as herein provided; and any deed or other instrument, executed pursuant to the authority hereby given, shall be valid and effectual for all purposes, as though the same had been executed by the officers of the delinquent corporation by authority of its board of directors, or by the individual banker personally. * * * The superintendent shall cause notice to be given by advertisement, in such newspapers as he may direct, weekly for three consecutive months, calling on all persons who may have claims against such corporation or individual banker to present the same to the superintendent, and make legal proof thereof at a place and within a time, not earlier than the last day of publication, to be therein specified. The superintendent shall mail a similar notice to all persons whose names appear as creditors upon the books of the corporation or individual banker If the superintendent doubts the justice and validity of any claim, he may reject the same, and serve notice of such rejection upon the claimant either by mail or personally. An affidavit of the service of such notice, which shall be *prima facie* evidence thereof, shall be filed with the superintendent. An action upon a claim so rejected must be brought within six months after such service. Claims presented after the expiration of the time fixed in the notice to creditors

shall be entitled to share in the distribution only to the extent of the assets in the hands of the superintendent equitably applicable thereto. * * * The moneys collected by the superintendent shall be from time to time deposited in one or more state banks of deposit, savings banks or trust companies, and, in case of the suspension or insolvency of the depositary, such deposits shall be preferred before all other deposits. At any time after the expiration of the date fixed for the presentation of claims the supreme court may by order authorize the superintendent to declare out of the funds remaining in his hands after the payment of expenses one or more dividends, and after the expiration of one year from the first publication of notice to creditors he may declare a final dividend, such dividends to be paid to such persons, and in such amounts, and upon such notice, as may be directed by the supreme court in the judicial district in which the principal office of such corporation or individual banker is located. Objections to any claim not rejected by the superintendent may be made by any party interested by filing a copy of such objections with the superintendent, who shall present the same to the supreme court at the time of the next application to declare a dividend. The court to which such application is made shall thereupon dispose of said objections or may order a reference for that purpose, and should the objections to any claim be sustained by the court or by the referee, such claim shall not be allowed by the superintendent until the claimant shall have established his claim by the judgment of a court of competent jurisdiction. * * * Whenever any such corporation or individual banker, of whose property and business the superintendent has taken possession as aforesaid, deems itself aggrieved thereby, it may, at any time within ten days after such taking possession, apply to the supreme court in the judicial district in which the principal office of such corporation or individual banker is located to enjoin

further proceedings; and said court, after citing the superintendent to show cause why further proceedings should not be enjoined, and hearing the allegations and proofs of the parties and determining the facts may, upon the merits, dismiss such application or enjoin the superintendent from further proceedings, and direct him to surrender such business and property to such corporation or individual banker. Whenever the superintendent shall have paid to each and every depositor and creditor of such corporation (not including stockholders), whose claim or claims as such creditor or depositor shall have been duly proved and allowed, the full amount of such claims, and shall have made proper provision for unclaimed and unpaid deposits or dividends, and shall have paid all the expenses of the liquidation, the superintendent shall call a meeting of the stockholders of such corporation by giving notice thereof for thirty days in one or more newspapers published in the county where the principal office of such corporation was located. At such meeting the stockholders shall determine whether the superintendent shall be continued a liquidator and shall wind up the affairs of such corporation, or whether an agent or agents shall be elected for that purpose * * *."

The statute makes five conclusions clear and certain. (1) The plaintiff is not dissolved and has retained the title to all of its property. (2) Neither the possession nor the power to liquidate evidences that the plaintiff was or is insolvent. (3) Legal actions and proceedings against the plaintiff are not forbidden or enjoined. (4) The section contemplates that the plaintiff could be sued. (5) The docketing of any judgment against it is not inhibited, and there is no express restraint upon the legal effect or enforcement of any judgment. Certain and clear, also, is it that the statute is the sole source and definition of the powers of the superintendent.

Even if the statute by the provision "the superintendent may, in the name of the delinquent corporation or

individual banker, prosecute and defend any and all suits and other legal proceedings " did not expressly permit suits and other legal proceedings against the plaintiff, the law, as established, did. Banks or corporations which are in the possession of a receiver because of their insolvency even may have judgments docketed against them. (*Pringle* v. *Woolworth,* 90 N. Y. 502; *Chemical Nat. Bank* v. *Hartford Deposit Co.,* 161 U. S. 1; *Bank of Bethel* v. *Pahquioque Bank,* 14 Wall. 383.)

The question to be decided by us is, are the judgments recovered against the plaintiff incumbrances against or upon its title to the real estate; do they create in the judgment creditors any interest or right in or claim or lien upon the land which would curtail the full ownership or enjoyment of it by the defendant or diminish its value? (*Forster* v. *Scott,* 136 N. Y. 577.)

It is a general rule that a judgment against an *insolvent* corporation after the appointment of a receiver of its property, business and assets *for the purpose of ratable distribution* among its creditors or against the receiver does not give the creditor who obtained it a preference over general creditors in the distribution of the corporate assets. (*National Bank of Commonwealth* v. *Mechanics' Nat. Bank,* 94 U. S. 437; *Denton* v. *Baker,* 79 Fed. Rep. 189; *Earle* v. *Penn.,* 178 U. S. 449; *Clark* v. *Bacorn,* 116 Fed. Rep. 617.)

The authority of the superintendent is somewhat analogous (but with differences) to that of a receiver of a national bank appointed by the comptroller of the currency. The receiver of a national bank is appointed only upon the insolvency of the bank, that is, when it "has refused to pay its circulating notes \* \* \* and is in default." (U. S. Rev. Stat. §§ 5234, 5236, 5237.) The receiver pays over all moneys to the comptroller, and (§ 5234) the comptroller shall make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction or adjudicated

in a court of competent jurisdiction," and pay over the surplus, if any, to the shareholders. (§§ 5235, 5236.) It is likewise a general, and I think a universal, rule that the law does not take the assets and business of a corporation into its protection against the enforcement of the corporate debts unless it be or is assumed to be insolvent and a ratable distribution of its assets is directed to be secured and effected, or unless it seeks dissolution. No case has come under my observation which holds that the law will, through a receiver or other agent or officer, deny to vigilant creditors of a solvent corporation the right to secure their debts through the ordinary and authorized remedies. In *Pringle* v. *Woolworth* (90 N. Y. 502, 510) the action was against a receiver of an insurance company upon a judgment recovered in Pennsylvania against the company after the appointment of a receiver. This court held that the action could be maintained, and said: " The only evidence as to the character of the receivership of the defendant, is found in the admission in the answer of the allegation in the complaint, that the defendant Woolworth was duly appointed receiver of the estate, property and effects of the Homestead Fire Insurance Company. * * * Whether it (the judgment) would give a priority in respect to payment of the claim, is another and quite independent question. * * * *It will be for the court to direct the receiver in respect to the payment of creditors, and their respective priorities.*" There are other decisions of like effect. (*Ellicott* v. *U. S. Ins. Co.*, 7 Gill [Md.], 307; *Decker* v. *Gardner*, 124 N. Y. 334; *Moore* v. *Southern States Land & Timber Co.*, 83 Fed. Rep. 399.)

By section 1251 of the Code of Civil Procedure each of the judgments docketed against the plaintiff " binds and is a charge upon, for ten years after filing the judgment roll," the real estate in question. The statement in the opinion of the majority of the court that when the superintendent of banks assumed possession of the property

and business of the plaintiff he became in equity the owner of the real estate then held by it contradicts the language and intention of the statute. The statute empowers the superintendent, a proper condition therefor appearing to him to exist, to take and retain the possession until the corporation shall resume business or its affairs be finally liquidated as it provides. While in possession he acts in the name and behalf and as the agent or representative of the bank, subject to the control of the court as prescribed, and has no rights or authority except such as the statute confers. The corporate existence is not suspended or terminated or the corporation interfered with beyond the scope defined by the statute. That neither the legal nor equitable title to the corporate property was given him is clear and certain from the entire language of the section, and especially from the provisions that he may withdraw from the possession at any time, that he may prosecute and defend all suits and other legal proceedings, and execute and deliver all instruments affecting the disposition of the real and personal property in the name of the corporation, and that when the claims of the corporate creditors shall have been satisfied the stockholders shall determine whether he " shall be continued as liquidator and shall wind up the affairs of such corporation, or whether an agent or agents shall be elected for that purpose." The reading of the decisions cited in the prevailing opinion will, I think, disclose that they are not apposite.

The stipulation as to the facts is silent upon the question of the solvency of the plaintiff and we can draw no inference from the facts as stipulated. (*Bradley* v. *Crane*, 201 N. Y. 14, 20; *N. Y. Tel. Co.* v. *Siegel-Cooper Co.*, 202 N. Y. 502, 506.) As already stated, the possession of the superintendent does not, as a matter of law, evidence that the plaintiff is insolvent. The direction or power to liquidate the affairs of the corporation does not necessarily imply or connote that the corporation is insol-

vent.   By far the greater number of the causes justifying the possession have no necessary connection with and do not involve insolvency.   The recalcitrancy or delinquency or hostile officering or management of a corporation permits the possession of it, for the purpose of liquidation, although abundantly and unquestionably solvent.   It is common knowledge that not infrequently solvent individuals, partnerships, associations or corporations wind up their business affairs by getting in the assets, settling with debtors and creditors and appropriating the surplus.   The section 19 is in part, although a minor one, a statute for regulation and control of the corporation itself and the corporate business.   From its double function the embarrassment in the present case arises.   Not only may the superintendent under it take possession of a solvent and prosperous corporation, but he may keep the possession for weeks or months, simply caring for and conserving its assets and performing its necessary activities and then withdraw, whereupon it resumes the business.   His possession is to continue until the corporation "shall resume business, or its affairs be finally liquidated as" provided in the section.   He may liquidate a solvent corporation as truly as an insolvent one.   There is not sound reason in nor precedent nor authority for a decision that a possession by the superintendent of a solvent corporation is such a custody of the law as bars the application to a judgment recovered during such possession of section 1251 of the Code.

Neither does section 19 provide for a ratable distribution of the assets among the creditors.   The moneys collected by the superintendent shall be from time to time deposited in a bank and the Supreme Court may by order authorize the superintendent to declare dividends, "such dividends to be paid to such persons *and in such amounts* as may be directed by the supreme court."   This is a statutory application of the principle enunciated in *Pringle* v. *Woolworth (supra),* "it will be for the court to direct

the receiver in respect to the payment of creditors and their respective priorities."

The effect of section 19, as applied to the facts here, is: The superintendent might have defended each of the actions in which the judgments were docketed; therein he might, in case the plaintiff was insolvent and the cause of action was not disputed, have applied to the court for and obtained an order restraining each action, or, in case the cause of action was disputed, obtained the order restraining the action and compelling the submission of it as provided in the section, or allowing it to proceed to judgment for the purpose of establishing the claim. He did not defend the actions and the judgments were obtained and he entered into the contract for the sale. The sale must be "on such terms as the court shall direct." In applying for the direction of the court, notice of the application should have been given to the judgment creditors. They were deeply interested in the subject-matter of the application. Their judgments and the charge thereof upon the real estate, if any, could not be affected by an order obtained *ex parte* by the superintendent or upon notice to the defendant only; nor will the result of the present action affect them. The court upon the proper application for leave to make the sale and the terms of it might have directed that the sale be subject to the judgments, or that the judgments did not charge the land, or that the charges of the judgments, if any, should be transferred to the avails of the sale, their validity or priorities to be determined by the court when application for declaration of dividends was made.

For the reasons stated, the judgment should be reversed and the controversy be dismissed, without costs to either party.

CHASE, J., concurs with HOGAN, J.; CARDOZO, J., concurs with MILLER, J.; WILLARD BARTLETT, Ch. J., and WERNER, J., concur with COLLIN, J.

Judgment affirmed.