420

Hughes, Schurman & Dwight, of New York City (Charles E. Hughes, Jr., Oscar R. Ewing, John Fletcher Caskey, John R. McCullough, and James B. McDonough, Jr., all of New York City, of counsel), for defendants-appellants Bond & Mortgage

*Writ of certiorari denied 55 S. Ct. 216, 79 L. Ed. —.

Guarantee Co. and George S. Van Schaick, Superintendent of Insurance of New York.

Milbank, Tweed, Hope & Webb, of New York City (Timothy Newell Pfeiffer, of New York City, of counsel), for defendant-appellant Title Guarantee & Trust Co.

Joseph Nemerov, of New York City (Joseph Nemerov and Maurice J. Dix, both of New York City, of counsel), for complainants-appellees and Bainbridge Colby, Edwin L. Garvin, John M. McGrath, and Nathan D. Shapiro, trustees.

Whalen, McNamee, Creble & Nichols, of Albany, N. Y., for Commercial Bank & Trust Co. of Albany, amicus curiae.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

### AUGUSTUS N. HAND, Circuit Judge.

The Bond & Mortgage Guarantee Company is a corporation organized under the Insurance Law of the state of New York and subject to the supervision of its insurance department. It was engaged in the business of guaranteeing the payment of the principal and interest of mortgages including those against which are issued and now outstanding $350,000,000 of participation certificates and of which complainants are the holders of $12,100. These certificates recite that the title company "hereby assigns to the purchaser an undivided share" in a particular bond and in the first mortgage securing the same, and provide that the bond and mortgage together with the policy of Bond & Mortgage Guarantee Company "guaranteeing to holders of this and similar certificates payment of principal and interest" are held by the Title Guarantee & Trust Company "as depositary and agent for the holders of such certificates which shall never aggregate more than the amount of principal remaining unpaid on said bond and mortgage. * * *" They also provide:

(1) That the Title Guarantee & Trust Company holds the bond and mortgage and the policy of Bond & Mortgage Guarantee Company for the benefit of the purchaser and any other persons interested therein.

(2) That the company on receipt of the interest and principal shall distribute the same among the persons entitled thereto.

(3) That the company shall have full power to take any action it may deem necessary to enforce any of the provisions of the bond and mortgage and to protect the mortgage security.

(4) That the company may for its own corporate account be the holder or pledgee of similar shares in the bond and mortgage.

(5) That the company may take up and cancel the certificate at any time on thirty days' notice in writing to the purchaser.

(6) That the certificate is nonnegotiable and can be transferred only by surrender to the company.

The form of guaranty policy issued by the Bond & Mortgage Guarantee Company provides that:

"By the acceptance of this guarantee this Company is made irrevocably the agent of the insured, until the bond and mortgage be paid, with the exclusive right, but at its own expense, to sue for and receive the proceeds of any policy of title insurance or fire insurance covering the mortgaged premises; and to collect the interest as it falls due on the bond and mortgage hereby guaranteed. Out of the interest so collected this Company is authorized to retain as its premium for this guarantee the excess over the guaranteed rate named above."

The insured agrees:

"1. To permit this Company to collect all interest and the principal secured by said bond and mortgage, and to refrain from collecting any part of the interest or principal secured by said bond and mortgage except through this Company. * * *

"4. To allow this Company, in the name of the insured, to exercise any right or option secured to the insured by said bond or mortgage, and to refrain from exercising any such right without the consent of this Company. * * *"

Bond & Mortgage Guarantee Company met its obligations as they occurred until the bank holidays in March, 1933, when it was closed under the President's Proclamation. It was permitted to reopen on March 15, 1933, under rules and regulations of the superintendent of insurance which, in order to prevent preferences, prohibited further paying out of moneys to the holders of its guaranties until it had collected them.

On August 2, 1933, the superintendent of insurance applied to the New York Supreme Court, Kings county, for an order to show cause why he should not be allowed to take possession of the assets and business of Bond & Mortgage Guarantee Company for the purpose of rehabilitation. On the same day the court made an order authorizing him to take possession of the property of that company and conduct the busi-

ness thereof and enjoined all persons, including the holders of participation certificates guaranteed by it, from dealing with or disposing of the assets of the corporation while the corporation was being rehabilitated except upon a proper authorization from the superintendent of insurance until the further order of the court.

It also enjoined the holders of participation certificates from bringing any action at law, or suit in equity, against the Bond & Mortgage Guarantee Company, or its assets, or against the superintendent of insurance, or from in any way interfering with the possession or control of the latter.

Pursuant to this order, the superintendent of insurance took possession of the business and property of the Bond & Mortgage Guarantee Company on August 3, 1933, and since that date has been continuously operating its business. The plan of rehabilitation of Bond & Mortgage Guarantee Company approved by the court provided for the formation of a new corporation known as Bond & Mortgage Guarantee Corporation. Its capital of $3,200,000 consists of cash and current assets transferred to it by the superintendent of insurance from the free assets of the old company in exchange for all of its capital stock, which is held by the superintendent for the creditors of the old company. The adoption of the plan of rehabilitation, including the formation of the new corporation, was found by the state Supreme Court to be "the most economical and efficient method of rehabilitation and * * * for the best interests of the creditors and policyholders of Bond and Mortgage Guarantee Company." This type of rehabilitation was specifically sustained by the Appellate Division in People, by Van Schaick, v. National Surety Co., 239 App. Div. 490, 268 N. Y. S. 88, affirmed by the Court of Appeals on March 20, 1934, 264 N. Y. 473, 191 N. E. 521. Since August 3, 1933, the superintendent of insurance has been continuously collecting interest upon certificated mortgages and remitting the same to the certificate holders.

Pursuant to sections 3 and 4 of the Schackno Act (Laws N. Y. 1933, c. 745), the superintendent of insurance, on September 22, 1933, took over and since then has exercised and controlled the functions of Bond & Mortgage Guarantee Company with respect to all of the certificated mortgages guaranteed by it, and has exercised the powers of section 4 in the distribution of moneys with respect to certificated issues. The latter section authorizes the superintendent of insurance to collect the principal and interest from the mortgages, to deduct a reasonable amount to cover costs and expenses, and to distribute the balance to the holders of the mortgage investments, but with power to withhold the same for such time as he deems expedient or to apply any part thereof for any purpose which he deems desirable for the protection of such holders.

The certificate of Jacoby is for $7,000, and is in a $1,000,000 mortgage on property in Queens county. While there are defaults in payment of taxes and interest upon the mortgage, the mortgagor is at the present time negotiating with the Reconstruction Finance Corporation for a loan with which to pay up all arrears of taxes and pay in advance interest at the rate of 4 per cent. a year to the certificate holders for three years if they will consent that the mortgage be subordinated to a prior mortgage to be given to the Reconstruction Finance Corporation.

The Schultzes own an aggregate of $5,100 of participation certificates in five different issues secured by mortgages.

In December, 1933, the complainants, who are nonresident holders of certificates, filed a bill in the United States Court for the Northern District of New York against Bond & Mortgage Guarantee Company, the superintendent of insurance, and Title Guarantee & Trust Company, the depositary. This bill filed on behalf of the complainants and of certificate owners similarly situated in substance alleged that the collateral underlying each issue constituted a trust estate for the series; that the defendant Title Guarantee & Trust Company is acting as trustee for the benefit of certificate holders including the complainants; that the owners and holders of the certificates are the sole beneficiaries and owners of the trust property, which is separate from the individual assets of the Bond & Mortgage Guarantee Company and the Title Guarantee & Trust Company; that the Bond & Mortgage Guarantee Company has failed to pay the principal and interest on the certificates, although the time within which to pay the same has expired; that the interests of the Title Guarantee & Trust Company, the Bond & Mortgage Guarantee Company, and the superintendent of insurance are opposed to and in conflict with their duties toward the certificate holders; and that they are not in a position to act for the benefit of the trust estates, the complainants, and other guaranteed certificate holders. The bill prays that suitable trustees be appointed

who should be authorized to take possession of and collect the assets of the trust estate and that the defendants should be enjoined from disposing of, or in any way interfering with, any of the property thereof, or with the successor trustees. It also prays that article 11 (section 400 et seq.) and article 12 (section 430 et seq.) of the New York Insurance Law (Consol. Laws, c. 28) and the Schackno Act should be declared unconstitutional in so far as they attempt to deprive complainants and those similarly situated of the control of the trust estates.

The mortgages in which complainants have an interest are upon lands within the Southern and Eastern districts of New York, and the bonds are physically on deposit with Title Guarantee & Trust Company outside of the Northern district. The District Court assumed jurisdiction of the suits, appointed temporary trustees of the bonds and mortgages underlying the series of participation certificates, and enjoined the defendants superintendent of insurance and Bond & Mortgage Guarantee Company from interfering with the possession or control of the trustees, from making substitution for any of the underlying bonds and mortgages, or from paying out any moneys received from the same, and provided that the temporary trustees should have full power to sue for, collect and take into their possession all moneys and other property of the trust estate and to institute any suits necessary for the recovery of any of the assets belonging to it.

We think that this order cannot be justified and must accordingly be reversed.

▉▉ In People v. Title & Mortgage Guarantee Co. of Buffalo, 264 N. Y. 69, 190 N. E. 153, the Schackno Act under which the superintendent of insurance is administering investments of mortgage guaranty companies and making plans for permanent administration of mortgages in which groups of investors are interested was declared constitutional by the New York Court of Appeals. Its validity must be assumed in order to authorize a single District Judge to enjoin the superintendent. Even if some of its provisions transcend constitutional limitations, the Bond & Mortgage Guarantee Company was authorized by the contract it made with the holders of the participation certificates to collect the mortgages held as collateral by foreclosure or otherwise and obtain payment of the interest due thereon. It also was given a share in the avails of the mortgages and interest so far as they exceeded the amounts guaranteed. The mere

default in meeting the guaranties would not seem to require the rescission of the arrangement and the transfer of the mortgages to the owners of the certificates unless they united in the demand. When the superintendent, by order of the New York Supreme Court, took over the assets of the Bond & Mortgage Guarantee Company, it took over a going business, together with a right to administer the mortgages. By virtue of the order and article 11 of the Insurance Law, the superintendent became in effect a receiver under the supervision of the state court, and the property under his control became in custodia legis. People v. Title & Mtg. Guarantee Co., 264 N. Y. 69, 190 N. E. 153; Isaac v. Marcus, 258 N. Y. 257, 179 N. E. 487; Matter of Casualty of America, 244 N. Y. 443, 155 N. E. 735; Lafayette Trust Co. v. Beggs, 213 N. Y. 280, 107 N. E. 644; Kline v. 275 Madison Avenue Corporation, 149 Misc. 747, 749, 268 N. Y. S. 582. In such circumstances, under established rules of law, the federal courts should not interfere with the possession of the state court. Lion Bonding Co. v. Karatz, 262 U. S. 77, 43 S. Ct. 480, 67 L. Ed. 871; Harkin v. Brundage, 276 U. S. 36, 48 S. Ct. 268, 72 L. Ed. 457; Farmers' Loan & Trust Co. v. Lake Street Elevated Railroad Co., 177 U. S. 51, 61, 20 S. Ct. 564, 44 L. Ed. 667; O'Neil v. Welch (C. C. A.) 245 F. 261; People's Trust Co. v. United States (C. C. A.) 23 F.(2d) 381. We can see no essential difference between the general character of the statutes under which a department of a state was appointed to manage and liquidate property in Lion Bonding Co. v. Karatz and O'Neil v. Welch, supra, and the statutes involved in the present case, and we hold that here the District Court had no right to intervene.

It may be added that it is impossible for us to see how trustees can be removed, and others appointed, by mere interlocutory orders, and without giving them their full day in court; that the suit is in rem and that there is the greatest doubt about jurisdiction when the bonds and mortgages seem to be physically within the Southern and Eastern districts of New York. Moreover, it is hard to see how these suits can properly be regarded as brought on behalf of a class. Doubtless many of the certificate holders do not reside in the state of New York, and it is not shown what certificate holders desire to interfere with the exercise by the superintendent of his duties under the New York statutes. If they do not, and are content to leave the securities where they are, we cannot see how

424

there is any common interest justifying a class suit. Without it, jurisdiction based upon diverse citizenship would be lacking. But if we assume that the details alluded to in this paragraph would have to be developed at final hearing, the District Court should not have interfered with administration by the superintendent acting under the supervision of the state court, and it is upon this ground that we base our decision.

We would add that the exact character of the legal relation of the guarantee company to the certificate holders is not of prime importance. Whether it be that of a trustee of a trust estate, of a donee of powers in trust, or of an agent under a power of attorney that is coupled with an interest, the result we have reached would be the same. In either event the superintendent has taken over a business under an order of the state court and is exercising functions which he is authorized to exercise in such cases by the New York law. This fact irrespective of the wisdom, or even the validity of his acts, makes it necessary for dissentient certificate holders to seek relief in the state court which had assumed prior jurisdiction. Accordingly, the criticism of the acts of the superintendent which have been made by counsel for the certificate holders are matters not open to consideration here.

For the foregoing reason, the interlocutory order should be reversed and the bill of complaint dismissed.