Nathaniel T. Helman, J.
Companion motions numbered 42 and 43 of June 18, 1964 are consolidated and decided simultaneously herein.
Defendants move for summary judgment pursuant to CPLR 3212 in both of these almost identical representative actions. Plaintiff Barca is suing on behalf of himself and all other similarly situated former employees of Music Corporation of America (hereinafter called MCA) and plaintiffs G-engo, Schepard and Weiss sue on behalf of themselves and all other similarly situated employees of MCA Artists, Ltd. (hereinafter called talent agency), a Avholly OAvned subsidiary of MCA. Both of these actions seek a judgment: (a) declaring that their interests in a profit-sharing trust created by the companies for the exclusive benefit of employees are fully vested and nonforfeitable ; (b) directing defendants to account Avith respect to such interests; and (c) directing defendants to pay out such interests, and enjoining distribution and transfer until these issues are determined. The defendants are trustees and/or administrators of the trust; MCA and the talent agency have intervened as parties defendant.
Plaintiffs were participants in a profit-sharing trust to which the company had made contributions since the inception of the trust in 1944. An eligible employee became a “ participant ” in the fund after one year of employment by the company. When a participant completed five years of service, 20% of his proportionate interest in the trust fund became nonforfeitable and thereafter upon the completion of each full year of participation in the trust an additional 20% of his proportionate interest became nonforfeitable. Thus, at the end of five years of continuous service Avith the company and thereafter five full years of participation in the trust, the entire 100% of his proportionate interest in the trust would become nonforfeitable. Voluntary or involuntary termination of the participant’s employment resulted in forfeiture of amounts held for his benefit which had not theretofore become fully vested.
Prior to July, 1962, most of the artists represented by the company and its affiliate, MCA Artists, Ltd., Avere members of the Screen Actors Guild, a union of artists. Objections Avere raised by the union that its regulations precluded the parent company and the associated talent agency from engaging simultaneously in the talent agency business and in the business of motion picture and television film productions. As a result of these objections, the company decided to discontinue this phase of its business. On July 13, 1962, the United States of America commenced an antitrust action against the company, *70 seeking amongst other things, the dissolution of the talent agency phase of the company business. Upon the entry of a consent decree, the employees were advised-that the company was discontinuing the talent agency business. The bulk of the employees resigned or were discharged.
Plaintiffs now contend that by reason of the termination of the company of its activities in the talent agency business, the respective interest in the trust of the plaintiffs became fully vested and nonforfeitable. Defendants, on the other hand, argue that none of the specified events, which, under the terms of the trust, would operate to accelerate vesting of participants’ interests had happened and so the interests of the employees did not vest.
Section 2 of article VII of the trust agreement, as amended May 7, 1945, December 11, 1962 and January 16, 1963, provides, in part: “A participant whose employment by the Company shall be terminated except (a) by death, (b) by declaration by the Committee of the total and permanent disability, or (c) by retirement, shall be entitled only to that part of his interest as shall have become non-forfeitable. ”
Since the employment of plaintiffs was not terminated by death, total disability or retirement, defendants dispute plaintiffs’ claim that they are entitled to a greater share of their respective interests in the trust fund than what has already been paid to them pursuant to the terms of the trust. The crucial provision of the trust agreement is that contained in section 3 of article XII which reads: “ Bankruptcy or Insolvency of Company. In the event that the Company is legally dissolved or liquidated by any procedure other than a consolidation or merger, this Agreement shall terminate automatically on the date of such dissolution or liquidation, and the Trustee shall make payments to each Participant or Beneficiary in accordance with Section 3 of Article VIII hereof.”
The position of the employees is clearly set forth in the complaint, paragraph 37, that ‘ ‘ the talent agency business of the Employer was liquidated and substantially all the employees engaged in such business resigned or were discharged” and that thereby a dissolution was accomplished causing a vesting of the interests of the plaintiffs. The references to “ dissolution ” or “liquidation” which occur “legally by any procedure ”, make it plain, however, that the section refers only to a termination of the company’s corporate existence. In the case of New York Title & Mtge. Co. v. Friedman (153 Misc. 697, 698) the court said: ‘ Dissolution of a corporation is the termination of its corporate existence in any manner, whether by expira *71 tion of the charter, decree of court, act of the Legislature, etc. (Cyc. L. Dict. [2d ed.] p. 318). It becomes civiliter mortuus. Liquidation of a corporation implies the winding up of the affairs of the corporation and settlement with creditors. (Lafayette Trust Co. v. Beggs, 213 N. Y. 280, 283; Assets Realization Co. v. Howard, 70 Misc. 651, 676.) Both involve, imply, intend and contemplate the end of the corporate existence.”
The liquidation referred to in the quoted section involved more than a winding up of the affairs of a division of the company. The caption of section 3 of article XII “ Bankruptcy or Insolvency of Company ” indicates that the liquidation referred to is that engaged in by debtors unable to meet their obligations. It is probable that the purpose of the clause was to protect participants of the trust, in the event of dissolution or liquidation by reason of insolvency. In any event, it is clear that the use of the word ‘ liquidation ’ ’ was in contemplation of the company’s going out of existence.
In Fernekes v. CMP Inds. (13 N Y 2d 217), the court dealt with the sale of part of the company’s business. Rejecting plaintiffs’ contention that this constituted a partial termination of the plan entitling plaintiffs to their proportionate share of the trust funds, the court said (pp. 223-224): ‘ ‘ Plaintiffs had no vested equity in the amounts credited to their accounts because they had been members of the Plan for less than five years and there is no proof in the record, and plaintiffs do not claim, that they had reached retirement age at the time their connection with the Company was severed. The only possible theory upon which they could recover would be that the Plan was discontinued while they were members. The Plan however was never discontinued. * * * There is no provision in the Plan for a partial discontinuance, and yet the courts below have held that a partial discontinuance resulted from the sale of the Transportation Division so far as the plaintiffs are concerned. It seems to us that courts below have written into the Plan something that is not there.”
Plaintiffs seek support from regulations drawn from the Internal Revenue Code and regulations promulgated by the Commissioner of Internal Revenue governing trusts of this nature. These provisions bear only upon the tax-exempt status of the trust under subdivision (a) of section 401 of the Internal Revenue Code (U. S. Code, tit. 26, § 401, subd. [a]) and cannot serve to alter or amplify the plain meaning of the contract of the parties.
Nor can we find substance to plaintiffs’ claim that the existence of factual issues between the parties precludes the granting of *72 summary judgment. The language of the trust agreement is unambiguous and no examination into the background and relationship of the parties is needed for its interpretation. Concededly, the company has not gone out of existence, and is still functioning, although with a reduced force of employees. The terms of the profit-sharing trust Avere nondiscriminatory and on its face no group of employees received any element of preferential benefit. The company, notwithstanding the consent decree of July, 1962, is free to engage in new fields of business and has been restricted only as to its operations as a talent agency. Should it do so, no provision of the trust provides for a termination of the- trust, and the agreement continues in full force and effect for the benefit of its then employees.
Sections 2, 3 and 4 of article XII set forth the only events which would have caused the interests of the plaintiffs to become vested, and none of these has concurred.
Accordingly, defendants’ motion for summary judgment will be granted.