ALEXANDER MURRAY et al., complainants-respondents,

v.

BEATTIE MANUFACTURING COMPANY et al., defendants-
appellants.

[Argued December 6th, 1911.    Decided March 4th, 1912.]

1. Upon the organization in 1882 of a corporation under the general act of 1875, the incorporators owning all the stock adopted a by-law which provided that dividends should be declared and paid semi-annually of such portion of profits as the directors should deem advisable; the directors acted thereon for many years.—*Held* that, even if the by-law was in conflict with section 52 of the act requiring dividends of the whole accumulated profits after reserving as a working capital a sum not exceeding one-half the capital stock, it is not open for a stockholder now to raise the objection.

2. The Corporation act of 1896 is a revision, and was intended to take the place of the act of 1875; and a construction which would limit the applicability of section 47 to a corporation created after the act of 1896 took effect, is too narrow; the section applies also to corporations organized under the act of 1875.

3. The legislature may alter the provisions of the Corporation act, even as to the relations of the stockholders *inter sese* where all the stockholders assent.

4. Under the Corporation act of 1896, when the by-laws authorize the directors to determine the amount to be reserved for working capital, their power to determine the amount of dividends is absolute as long as they act in the exercise of an honest judgment.

5. Under the Corporation act of 1896, when the by-laws authorize the directors to determine the amount to be reserved for working capital, it is not illegal to pursue a policy to secure stability in the dividend rate by making the earnings of the prosperous years help out the deficiencies of other years.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Stevenson, whose opinion is reported *ante p. 322.*

The complainants are stockholders of the Beattie Manufacturing Company and seek by this bill to compel the directors to declare a dividend of all the net earnings and accumulated profits

not needed for the legitimate purposes of the company's business. The bill was filed September 20th, 1905. Evidence was taken in 1906, and, on June 27th, 1910, the vice-chancellor held that the complainants were entitled to relief; but a further hearing was had to ascertain the condition of the company at the time, and in 1911 the vice-chancellor held that a dividend of twenty per cent. should be declared, payable not on demand as the statute requires, but in three equal installments, on the 1st of April, the 1st of July and the 1st of October, 1911. From this decree both parties appealed, the defendants because they denied the right to compel the payment of any additional dividend; the complainants upon the ground that the dividend of twenty per cent. is insufficient because it should be of the whole amount of the accumulated profits in excess of its capital stock paid in and not legally reserved as a working capital. The company was organized under the act of April 7th, 1875, by a certificate dated June 24th, 1882. One of the purposes of the corporation was to purchase of Robert Beattie, one of the corporators, his carpet and woolen factory, and the lands adjoining, together with the water power and privileges. Robert Beattie and his two sons were the sole incorporators and held all the capital stock, amounting to $300,000. Among the objects of the corporation was the manufacture and sale of carpets and other merchandise, the erection of buildings, mills and machinery, for the purpose of the manufacture, the improvement, renting and selling of real estate, and the carrying on of any other business necessary for the proper management and development of the property. Robert Beattie transferred his business and a large amount of valuable real estate to the company, the value of the assets transferred exceeding the nominal capital stock. A portion of the real estate has since been sold to the East Jersey Water Company for $515,000, and a mortgage for $315,000 has been taken from the water company to secure part of the purchase-money. At the beginning Robert Beattie owned one thousand six hundred shares of the stock, and each of his sons seven hundred shares. By Robert Beattie's will, a portion of his stock was bequeathed to his sons, Robert and William, and his two sons-in-law, Dixon and Gedney, in trust for his daughters during life, with the provision that upon the death of a daughter the

stock held in trust for her should go to her issue, if any; if none, then to her heirs-at-law. One of the daughters is unmarried and two of the others are childless, so that the two sons have a personal interest in the reversion. William Beattie, one of the sons, has died, and has been succeeded as a director of the company by the son of Robert. By the will of the deceased son, Robert is appointed executor with his widow, and stock of the company is bequeathed to them in trust, to be held for the testator's widow and daughter during their lives. By the will of Robert Beattie, Sr., two hundred of his one thousand six hundred shares were bequeathed to his two sons, so that after his death they held a majority of the stock. By virtue of the trusts, Robert Beattie also controls most of the balance of the stock.

The company has been very successful. Its assets, which amounted to $381,519.53 in 1882, had increased to $1,394,445.69 in 1910, of which amount over $200,000 was in actual cash. It had been declaring dividends at the rate of ten per cent. (one year, twelve) for the six years prior to the filing of the bill. Its earnings during the six years had varied from $33,073.31 in 1905, the year the bill was filed, to $78,045.99 in 1903.

*Mr. John B. Humphreys* and *Mr. John W. Harding,* for the complainants-respondents.

*Mr. Gilbert Collins,* for the defendants-appellants.

The opinion of the court was delivered by

SWAYZE, J.

The first question that arises is a legal one. The corporation was organized under the General Corporation act of 1875, and the complainants insist that it is a manufacturing corporation within the meaning of section 52 of that act, and for that reason required, after reserving as a working capital a sum to be specified by the directors not exceeding one-half the capital stock, to declare a dividend of the whole accumulated profits. The defendants claim that, because the corporation had objects other than the manufacture and sale of goods and because a considerable

amount of the assets it took over from Robert Beattie consisted of land, it was not a manufacturing corporation within the meaning of the statute. It is unnecessary to decide this precise question, for the reason that the provisions of section 52 were made inapplicable by the conduct of the stockholders. Immediately upon the organization of the corporation, the three incorporators owning all the stock adopted a by-law, which provided that dividends should be declared and paid semi-annually of such portion of profits as the directors shall deem advisable. Even if this by-law was in conflict with the fifty-second section of the act, it would not be open at this late day for a stockholder to raise the objection after the directors had acted upon the by-law for so, many years. The principle applicable is that established by the New York court of appeals in *Kent* v. *Quicksilver Mining Co., 78 N. Y. 159*, and approved by this court in *Camden and Atlantic Railroad Co.* v. *May's Landing, &c., Railroad Co., 48 N. J. Law (19 Vr.) 530*. The rule was applied by the court of chancery to a case like the present. *Raynolds* v. *Diamond Mills Paper Co., 69 N. J. Eq. (3 Robb.) 299*. The directors have been permitted to invest the earnings, over and above the dividends declared, in machinery, merchandise and other assets necessary for the successful conduct of the business of a growing company and the stockholders, having assented thereto, ought not to be allowed to embarrass the directors or the company by now asserting rights in conflict with their previous conduct. The statute itself has been modified as the legislature from time to time found necessary as the result of the experience of our numerous corporations. In 1891 (*P. L. 1891 p. 176*) a proviso was attached to section 52 enacting that, when the accumulated profits consisted in part of real property or merchandise necessarily employed in the business of the corporation, the same should not be regarded as profits for the purpose of the declaration or payment of a dividend unless a majority of the directors or stockholders should, by resolution, declare that all, or some part, of the accumulated profits invested in real estate or merchandise should be used as a part of the accumulated profits for the purpose of a dividend. In 1896, when the Corporation act was revised, a still further change was introduced. By section 47 of the act of 1896, the directors are re-

quired, after reserving as a working capital such sum as shall have been fixed by the stockholders, to declare a dividend of the whole accumulated profits exceeding the amount reserved. By a proviso the corporation was authorized in its certificate or by-laws to give the directors the power to fix the amount to be reserved as a working capital. It is argued that this section is inapplicable to the present case, because the Beattie Manufacturing Company is not incorporated under the act of 1896. The act of 1896, however, is a revision, and was intended to take the place of the act of 1875, which is repealed except so far as expressly re-enacted, and section 2 provides that every corporation shall be governed by the provisions and subject to the restrictions and liabilities of the act so far as the same are appropriate to, and not inconsistent with, the charter or act under which the corporation was formed. We think a construction which would limit the applicability of section 47 to a corporation created after the revised act of 1896 took effect, is too narrow, and that the section applies also to corporations organized under the act of 1875, for which the act of 1896 was a substitute. After the passage of the act of 1896, the stockholders of the defendant company, in 1900, unanimously adopted a by-law authorizing the directors to determine from time to time the amount to be reserved by the corporation as working capital. With this power in the directors, it is a mere matter of form whether they determine the amount of working capital and declare the balance as a dividend, or whether they declare a dividend, leaving the balance of the earnings undistributed, and in fact working capital. It is urged that section 52 of the act of 1875 regulated the rights of the stockholders *inter sese,* and that it was beyond the power of the legislature to impair the obligation of this contract without the unanimous assent of the stockholders. In fact, this unanimous assent was had, and the effect was, in substance, to adopt the provisions of the act of 1896. There can be no objection to the legislature, by virtue of its reserved power, altering the act, provided all the stockholders assent. This court has expressly approved a change which materially changed the voting power of stockholders. *In re Newark Library Association, 64 N. J. Law (35 Vr.) 265.* This is as far as the facts of the present case require us to go. We must not be

understood, however, as deciding that the legislature was without power to make the change that was made by the act of 1896 even if the stockholders did not assent. The provision limiting the amount to be reserved as working capital had a twofold aspect. It had the effect of securing dividends to the stockholders where the corporation was successful, and of limiting the power of the corporation to increase its assets largely beyond the capital authorized by its original certificate. This was a matter of state concern, for the state might well desire to avoid the accumulation of capital in the hands of a single corporation even though the increase came wholly out of its own earnings; and it is also a matter of state concern that a corporation should be permitted to accumulate a sufficient fund to secure its credit and make permanent its successful operation.

The unanimous assent of the stockholders to the by-laws of 1900 was an assent only of the persons owning the legal title to the stock. This is all that is necessary, for, under the statute, they alone have the right to vote, and trustees are expressly authorized to represent the stock held in trust and to vote thereon as a stockholder. (Section 39 of the act of 1875, Revision 184, which is now a part of section 37 of the act of 1896, C. S. 1622.) The evidence, however, goes further. The complainants received dividends for years without objection, and must be held themselves to have waived any right to object so long as the directors acted honestly and fairly. The action of the stockholders in assenting to this by-law was, of course, not the act of the directors, but of the stockholders as such. Not only was there this tacit approval of the conduct of the directors, but even when this bill was filed, the complainants did not rely on the act of 1875 and ask for a distribution of all accumulated profits in excess of the working capital permitted by that act. They very properly limited their prayer for relief to a distribution of profits not needed for the legitimate purposes of the company's business. The proofs make clear the reason for this limitation; the business has grown so that more capital is necessarily employed. The complainants evidently had this in mind, and for their own advantage, as well as that of the other stockholders, refrained from asking a dis-

tribution of all the profits to which they would have been entitled under the act of 1875.

This brings us to the question of fact in the case; the propriety of the court of chancery ordering the declaration of the additional dividend. The rule of law that governs was clearly stated in this court by Mr. Justice Garrison in *Laurel Springs Land Co.* v. *Fougeray, 50 N. J. Eq. (5 Dick.) 756.* After stating the power of the court to order the directors to make a dividend of unused profits when they improperly refused to do so, he adds that the authority of the directors is absolute as long as they act in the exercise of an honest judgment. To put it in the language used by the court of chancery in another case, "the court should not intervene if there is any room for doubt." *Raynolds* v. *Diamond Mills Paper Co., 69 N. J. Eq. (3 Robb.) 299, 307.* The question, therefore, is not whether a vice-chancellor, or this court, with all the light that has been thrown upon the case by a prolonged litigation, during which the company has continued to thrive and has increased its assets, shall now say that the directors should have declared a larger dividend more than six years ago; but whether the directors, in view of their knowledge at the time, their experience of the business, their reasonable apprehension of its future hazards, were justified in withholding from the stockholders all the profits, except the ten per cent. dividend declared. It would be very unfair, after the directors had for six years conducted a corporation successfully, for the court to say that they ought to have anticipated the successful operation of the company for six years in advance. The very conduct of this case is sufficient to show the difficulty that an honest director must have felt in November, 1905. The evidence was taken in 1906, and for four years thereafter the vice-chancellor held the matter under consideration, and even then decided to decree an additional dividend only tentatively, and found it necessary, before actually making the decree, to take further testimony as to the then existing condition of the company, so that the final decree was not made until February, 1911, five years and three months after the bill was filed. The vice-chancellor, even then, did not venture to decree that the whole dividend of $60,000, awarded by him, should be payable on demand; but he allowed it to be paid in

three installments, the last more than seven months distant. No doubt this was a proper precaution; but the statute requires that dividends declared by the directors' shall be payable on demand, and, if proper caution prohibited such a payment in 1911 after years of business (some of which were extremely profitable), how can it be said that the directors failed to exercise an honest judgment in not declaring a larger dividend in 1905, which would necessarily be payable on demand? It may be that the directors were overcautious; but, in view of the fact that the earnings of the company for the year 1905 were only eleven per cent., we think there was no failure to exercise an honest judgment when they declared only a ten per cent. dividend. It is true that they had gradually accumulated a surplus, but the profits of their business had varied from year to year. They had gone through a change of fashion which decreased the demand for carpets and forced them to go into the new business of manufacturing rugs. They must naturally have felt that a similar change of fashion might again involve them in unusual expense. They had the experience of the panic of 1893, and might well dread a recurrence of a similar business depression. Moreover, the very increase of their business made it necessary to have a larger circulating, or working, capital. It is clear that if they had pursued the policy which the complainants now insist they were legally bound to pursue, and had limited their working capital to fifty per cent. of their capital originally subscribed, they would have been quite unable to conduct their business successfully, and would probably have had to succumb to the competition of stronger concerns. The learned vice-chancellor himself recognized in an earlier case the necessities presented by such a situation. *Stevens* v. *United States Steel Corporation,* 68 *N. J. Eq.* (*2 Robb.*) *373.* Even the complainants did not venture in their bill to pray for a distribution of all the accumulated profits, but limited their prayer to a declaration of a dividend of all the net earnings and accumulated profits not needed for the legitimate purposes of the company's business. Naturally, the amount needed for the legitimate purposes of the company's business must be determined by the directors who are entrusted with the management of the company. Even upon this appeal, counsel for the complainants urge that

the directors might obtain the cash necessary to pay the large dividend demanded by reducing their stock of merchandise, and by using the credit with the banks to be obtained by means of the East Jersey Water Company mortgage. The merchandise seems to have been higher in 1910 than in previous years; but, even if we assume that it was higher than was necessary, it does not follow that the directors were wrong five years before. The amount is not so great that we can say it indicates an attempt to invest cash in order to avoid a dividend. In fact, the dividends have been doubled pending the suit as the company prospered.

The total net profits of the company from its organization until November 30th, 1905, were $1,106,104.35, as stated in complainants' brief. The dividends declared amounted to $633,000; in some years the dividends exceeded the earnings of the year. We cannot say that the retention of the difference in this developing and successful business indicates any lack of honest management. It is proper to look with suspicion upon the conduct of directors who have a personal interest adverse to the declaration of dividends, but we are unable to draw the same conclusion as the vice-chancellor from the facts. Nor can we say that it is illegal for the directors under our present statute and the by-laws of this corporation to pursue a policy to secure stability in the dividend rate by making the earnings of the prosperous years help out the deficiencies of other years. The natural inference to be drawn from our cases is that such a method is legal. *Goodnow* v. *American Writing Paper Co.*, *73 N. J. Eq. (3 Buch.) 692; Bassett* v. *United States Cast Iron Pipe and Foundry Co.*, *75 N. J. Eq. (5 Buch.) 539.*

The decree in this case should be reversed, with costs. This, necessarily, disposes of the question raised as to the allowance of a counsel fee. Since the complainants are not entitled to costs, but are liable for costs awarded against them, they, of course, cannot be entitled to a counsel fee.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Garrison, Swayze, Parker, Bergen, Voorhees, Kalisch, Bogert, Vredenburgh, Vroom, Congdon, White—12.