[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 362 
This action was brought by the plaintiff as the holder of a large amount of the preferred stock issued by defendant to restrain the distribution by the latter of about $80,000,000 as a dividend among its common stockholders. The material facts set forth in the complaint which asks this relief are as follows:
At the times involved the defendant had a large outstanding issue both of preferred and common stock. Prior to January 8, 1914, it had carried to the credit of its profit and loss account large amounts based on valuations which are not questioned, and at that date the credit balance of this account was more than $80,000,000. Of this amount upwards of $15,000,000 had accrued through the retirement of defendant's convertible bonds *Page 365 
with common stock on a basis of one share of stock at par for $175 par value of bonds, and upwards of $58,000,000 had accrued as gain or profit on the sale of stocks of other corporations purchased and held by or for the benefit of the defendant. On the date above mentioned the defendant declared the extraordinary dividend in issue payable in cash and property to its common stockholders and chargeable against said balance so standing to the credit of its profit and loss account. The plaintiff holds its preferred stock under a clause in the defendant's articles of association which reads as follows:
"Such preferred stock shall be entitled, in preference and priority over the common stock of said corporation, to dividends in each and every fiscal year, at such rate, not exceeding four per cent per annum, payable out of net profits, as shall be declared by the Board of Directors. Such dividends are to be non-cumulative, and the preferred stock is entitled to no other or further share of the profits."
It is conceded that the plaintiff has received all of thedividends and "profits" to which it is entitled under the foregoing article. It is also conceded that the amount carried to the credit of profit and loss as above stated need not be retained by the defendant but may be distributed among its stockholders. It is, however, insisted that this balance does not represent profits which under the foregoing article may be distributed exclusively amongst holders of common stock, but that it represents to the extent of the two items above mentioned an increase of or accretion to capital which must be distributed as capital amongst all the stockholders including those holding preferred stock. Thus arises the question which we are required to decide. If this is a distribution, even though unusual in amount, of accumulated gains or profits of a character which the directors of a going corporation may at any time in their discretion divide *Page 366 
amongst the stockholders as returns or income on their investment, the plaintiff has no ground for complaint. It elected to take stock having a preferred but limited right to dividends and profits. It chose the right to returns on its investment which made up in certainty for what they lacked in possible quantity, and there is no inequity in holding it to its choice. If, on the other hand, all or part of the gains which it is proposed to distribute are accretions to and have somehow become permanent capital and been withdrawn from availability for dividends it will be assumed that they must be distributed amongst all the stockholders.
When a corporation is organized it secures capital by the issue of shares of capital stock. The fund or property thus secured answers the twofold purpose of furnishing means for carrying on the operations of the corporation and also security for the payment of creditors. This capital stock is carried as a liability and universally, so far as I am aware, at its par amount. It is thus carried as a liability because this is the proper book-keeping entry. But aside from this, such entry also serves to emphasize the duty of the corporation to keep its capital stock unimpaired for the protection of those dealing with it. If the operations of the corporation result in gains, such gains are carried to the credit, not of the capital stock account but of some other account as surplus or profit and loss. Of course they may be capitalized by the issue of stock against them and sometimes in the cases of certain corporations like banks or insurance corporations where a certain ratio between assets and liabilities other than to capital stock is required, such surplus or profits may be counted and maintained as capital although not formally capitalized.
In the absence of some such special consideration I think we may take notice that it is the ordinary rule of corporate management established by decisions, statutes and business usages that the surplus of these gains or *Page 367 
profits beyond what may be necessary to keep good the liability to capital stock which has been issued, may, in the discretion of a board of directors, be distributed amongst its stockholders as dividends and returns on their investment. Such being the general rule, it is incumbent on the plaintiff to show that there is something so peculiar in the two transactions being considered that the profits resulting therefrom are of a different nature in respect of this subject than those ordinarily realized in corporate business, and I think it has failed to do this.
I shall not attempt to discuss whether there might be an accretion to or increment of capital of a going corporation under such circumstances and of such a character that it would become permanent capital and might not be distributed as dividends. That question for the purposes now concerning us doubtless would be surrounded with some uncertainty and difficulties. It is sufficient for this appeal to consider the transactions before us and see, as I think we must, that there is nothing about them which impresses their results with any other character than that of ordinary current profits which the directors may in their discretion divide among the stockholders entitled to dividends.
It is said, because in the retirement of its convertible bonds defendant sold and issued its capital stock at $175 per share of $100 par value, that this entire sum was paid in as capital and must be held and distributed as such. That is not my interpretation of the transaction under the allegations of the complaint. The amount at par value paid for each share of stock undoubtedly became capital which the corporation was required to preserve and maintain as against its liability on the outstanding share of stock which had been issued for it. Just as undoubtedly the extra $75 paid per share represented the amount of accumulated profits or surplus which it was supposed would be apportionable to each share of new *Page 368 
stock after payment and issue as aforesaid. In other words, as I think we must assume, the payment of this premium was not for permanent capital but for the purpose of equalizing as between new and old stockholders their respective rights in accumulated profits which so far as we know were current and distributable in dividends. When paid in this premium became part of such accumulation of profits and surplus and distributable as such. It was credited to profit and loss and not to capital.
It is unnecessary to decide what would be the rule of distribution in the case stated by plaintiff by way of illustration where stockholders on the organization of a bank subscribe for stock at double its par value for the express purpose of creating a permanent surplus or capital with the intent of affording a greater security to creditors and attracting depositors. That case is utterly different from this one.
The other transaction which produced a large item in the profit and loss account was the purchase and sale at an advance of various stocks. Ordinarily the profits made by a corporation on the purchase and sale of property would so clearly belong to a fund applicable to the payment of dividends that there would be no debate about it. The plaintiff in this case, however, says in substance that the defendant was not organized to deal in stocks and, therefore, the preferred shareholders could not have had such profits in mind when they agreed to take four per cent dividends in full of their share of the profits and, therefore, further, "an accretion realized from such traffic is not profits within the contemplation of the instrument (defendant's charter), but belongs to capital." It seems to me that this reasoning involves a misinterpretation of the charter and a decided nonsequitur. The language by which these stockholders relinquished all other claims to profits in consideration of preferential dividends was broad and comprehensive. They were to be "entitled to no other or further share of the profits." There is *Page 369 
no limitation on this exclusion from any farther participation in whatever was profits; nothing to suggest that one item of profits was to be differentiated from another by the nature of the transaction which produced it. The contract was that whatever in the way of profits went into the profit and loss account should be subject to a payment of certain dividends on preferred stock before common stock received any and that was the end of the rights of the former class of stock so far as profits were concerned. The result of the transaction in question was a profit and the distribution of it is subject to this agreement. This seems so clear that it difficult by discussion to make it more so. The proposition that these profits because resulting from what was perhaps an unusual transaction are not profits, but are an accretion which "belongs to capital," notwithstanding the painstaking argument of counsel, does not seem to have any foundation on which to rest except earnest assertion.
No case has been cited which in my opinion sustains the proposition that these gains must be treated as an accretion to capital and distributed as such, rather than as profits distributable in the discretion of the directors in dividends. The case Matter of Bridgewater Navigation Co. (reported [in Chancery Division and on appeal therefrom in the Court of Appeal] L.R. [39 Ch. Div.] 1, and [on appeal to House of Lords] L.R. [14 App. Cas.] 520, and [on a further appeal] L.R. [2 Ch. Div. 1891], 317) is especially relied on by the appellant, but in my judgment it is entirely distinguishable from the present case and does not at all sustain appellant's position.
The Bridgewater Navigation Company issued both common and preferred shares. One of the articles of association provided that, subject to certain possible deductions, the "entire net profits of each year" should belong to the shareholders. It was provided that the preferred shares should "entitle the holders thereof to a dividend after the rate of 5 per cent per annum * * * taking precedence *Page 370 
of and priority over all dividends and claims of the holders of the ordinary shares of the company." Certain sums were carried from current profits each year to various reserve and depreciation funds. After awhile the company sold out its business and property and entered on voluntary liquidation. After satisfying all liabilities and repaying all amounts paid in by the shareholders there remained a large surplus, and the question was how this surplus should be distributed as between preferred and common shareholders. It is true that the common shareholders amongst other things did urge that the rights of preferred stockholders in gains and profits were limited to a preferential dividend of 5 per cent, and that after payment of this the common stockholders were entitled to all remaining surplus. All of the courts disagreed with this contention, but it is not too much to say that they repeatedly affirmed as the fundamental basis for this conclusion the proposition that under the articles of association the principles which would control the distribution by a going concern of current profits between common and preferred stockholders with preferential but limited rights to dividends were utterly inapplicable to surplus and accretion resulting from augmented values realized by a beneficial sale on dissolution and liquidation; that the provisions concerning distribution of profits by way of dividends then no longer applied. There is in my opinion nothing whatever to be found in any of the opinions which is applicable to the present case or which supports the proposition that the profits now about to be distributed have become capital which must be paid if at all to preferred as well as common stockholders. In fact I think some support is found for respondent's position in the decision that the sums carried from annual profits to various reserve funds of a permanent character did not thereby lose their nature of divisible profits but even in liquidation proceedings were to be distributed as profits away from the preferred stockholders. *Page 371 
The case of Niles v. Ludlow Valve Mfg. Co. (196 Fed. Rep. 994; affirmed, 202 Fed. Rep. 141), so far from being an authority for the appellant, is on the facts presented and questions actually decided an authority for respondent. While there is a contingent suggestion that preferred stockholders might have an interest in an "addition to the original value of the corporate property * * * due * * * to an unearned increment attaching to the corpus of defendant's estate," I should think that this had reference to the situation which might arise on dissolution proceedings. But at any rate it is held that profits accumulated and carried for many years belong to common stockholders and that preferred stockholders with limited rights to dividends are not entitled to share therein.
I do not regard as helpful to this discussion those cases cited by the plaintiff and a multitude of others which might have been cited, dealing with the respective rights of life tenant and remainderman in extraordinary distributions of accumulated gains on stocks held in a trust fund. While chance expressions may be extracted from the opinions seeming to be pertinent to the settlement of the present question, the questions really involved in those cases and in this one are fundamentally different. The general problem with which the courts have struggled in those cases has been how such unusual distributions should be paid over in order best to carry out the assumed intent of the testator or benefactor who created the trust. As was made clear by Judge CHASE in his thorough consideration of this subject in Matter ofOsborne (209 N.Y. 450) more frequently the much-considered question in this class of cases has been whether the distribution impaired what was the corpus or capital of the trust fund when it became effective rather than whether it involved a division of the capital of the corporation. Various rules adopted in different jurisdictions by which to determine the application of these extraordinary distributions as well as the *Page 372 
ones finally formulated in the Osborne case (pp. 458 et seq.,
477) make it perfectly apparent that the courts were not there concerned with questions of capital and profits as between corporation and stockholders which are involved here.
As against the contentions of the plaintiff, I think it is abundantly established by decisions which are in conformity with and fortified by commercial understanding and experience that the gains or profits realized by a corporation at least from its active transactions such as those under consideration here constitute profits and surplus which are available for dividends. (Williams v. West. Union Tel. Co., 93 N.Y. 162, 191;Lubbock v. British Bank of So. Amer., L.R. [2 Ch. Div. 1892] 198; Mackintosh v. F. P.M.R.R. Co., 34 Fed. Rep. 582, 606.)
In the Williams case it was written on the subject: "But if it can be conceived that this was a dividend of property within the meaning of the section of the Revised Statutes above set out, then what property did it divide? Not any portion of the capital of the company; that remained intact. After subtracting the dividend there remained to the company the full amount of its prior capital stock, to wit: Property to the value of $41,073,410. Such is the finding of the trial court, and that cannot here be disputed. The company had made surplus earnings which it could have divided, but instead of dividing them it had invested them in property to facilitate and enlarge its business; and such property was found to be worth $15,526,590. That sum constituted its surplus. It was commingled with the other property of the company and used for corporate purposes. But it was not beyond the reach of the dividend-making power of the directors. They could reclaim it for division among the stockholders, and, if practicable, convert it into cash for that purpose. They could borrow money on the faith of it and divide that. They could issue to the stockholders certificates of indebtedness, redeemable in the future, representing *Page 373 
their respective interests in such surplus, thus, in effect, borrowing the same of the stockholders. Desiring to use the surplus and add it to the permanent capital of the company, and having lawfully created shares of stock, they could issue to the stockholders such shares to represent their respective interests in such surplus. In doing these things no law would be violated, the capital would be kept intact, and no stockholders or creditors would have any legal right to complain. All this, however, depends upon the finding of the trial court that the surplus is equal to the dividend. That finding is not open to criticism here. It was not disturbed at the General Term, and, therefore, concludes us.
"When a corporation has a surplus, whether a dividend shall be made, and if made, how much it shall be, and when and where it shall be payable, rest in the fair and honest discretion of the directors uncontrollable by the courts."
The order appealed from should be affirmed, with costs, and the question certified to us answered in the negative.
WERNER, COLLIN, HOGAN, MILLER and CARDOZO, JJ., concur; WILLARD BARTLETT, Ch. J., not sitting.
Order affirmed.