This is a bill filed by two stockholders against the defendant company and all the remaining stockholders, three in number, to compel the company (a) to declare a dividend; (b) to reduce the respective salaries of the individual defendants, and (c) to compel them to restore to the company any excess of salaries above the value of the services by them each rendered.
Of course, the defendants raise no objection to the right of the complainants to file the bill, for the reasons commented upon by Vice-Chancellor Stevenson in Raynolds v. Diamond MillsPaper Co., 69 N.J. Eq. 299.
During his lifetime, Christian Blancard, the father of all the parties except the corporation, established a business for the manufacturing of settings for jewelry, and, before his death, associated with himself therein the defendants Frederick Blancard and Rudolph Blancard (two of his sons) and Thomas A. Mountford. In 1912, upon the death of their father, his two sons, still with Mountford in their employ, continued the business. They caused a corporation to be organized under the laws of New York, and transferred the business and all the assets thereto. From that time to the present the destinies of the enterprise have been in the hands of the individual defendants, the complainants having rendered nothing but the most nominal services. The defendant Rudolph has had the general supervision of the manufacturing plant, has been the financial agent of the company, designed *Page 266 
and generally taken care of the designing of its products, fixed prices, and concerned himself in many other activities pertaining to his position. Frederick has discharged the duties of attending to the selling of the company's manufactures and directing its office in the city of New York, through which the selling has been done. Thus, it will be seen that these men have been, as Vice-Chancellor Stevenson pointed out in the case just mentioned, more than mere officers, and their activities have made them the agents and guiding spirits of the company. Mountford is a veteran toolmaker and jeweler, and the reliance upon his training, experience and ability, as expressed by the other defendants and their father, is not misplaced.
Originally, and until the year 1920, the entire business of the company was carried on in the city of New York. About that time the lease upon the premises where the manufacturing was carried on was about to expire, and it was thought advisable to acquire a plant of their own in the city of Newark, New Jersey, because of a number of reasons, one of which being the enormous rents at that time prevailing in New York and all over the Metropolitan area. This project was carried out and also the incorporation of the present company in this state, and the taking over by the latter of all the assets of the New York company and the assumption of all its liabilities. The stock of the New Jersey company, one thousand one hundred and thirty shares in all, of a par value of $100 each, was divided among the five individual parties hereto in the proportion of fifty shares to Mountford and two hundred and seventy shares to each of the others. While incorporated in New Jersey, in 1920, there seems to have been no organization or corporate activity until a meeting of the incorporators on March 1st, 1922. The auditor's report for the period ending December 31st, 1922, the last fiscal year before the filing of this bill, showed capital stock of $113,000, surplus of $195,395.17, and a net profit of $25,354.72 for that year.
At the time that Rudolph entered into the business it was not in a prosperous condition, but from the time of the death *Page 267 
of the father down to the year 1920 it appears to have flourished, so that over the period covered by the last ten years, lumping the fat with the lean, the stockholders have enjoyed an average annual dividend of eight and one-half per cent. Since 1920 there has been but one dividend declared, and that of only five per cent. Notwithstanding, however, the directors, at a meeting held on March 1st, 1923, voted to, and did, increase their respective salaries as follows: Rudolph from $12,512 to $14,300, and Frederick from $11,300 to $14,300. It was undoubtedly these increases of salaries, at the same time the dividends were reduced, that are the main causes of the complainants' dissatisfaction.
Two objections are made by the complainants to the failure to declare a dividend of more than five per cent. in 1923, one because it could have been made much larger out of the net profits of the preceding fiscal year, and the second because it could have been declared out of surplus. Upon the figures it would so appear. But it has been shown that there was then pending a claim against the corporation by the national government of something in excess of $23,000 for deferred income tax payment, and that, subsequently, the company was compelled to actually pay slightly more than $17,000 on this claim, and that to have dissipated any more of the net profits in dividends than was done would have been hazardous to the corporation. Furthermore, a document has been proved under which the New York company was obligated to pay to the widow of Christian Blancard an annuity for her support and maintenance not to exceed the sum of $10,000, and which obligation, of course, was assumed by the present company, as I have indicated above. I think from these facts it is indisputable that no larger dividend could have been safely made out of the profits of 1922.
But the complainants say, in the second place, that at all events a dividend could have been declared and should be now ordered out of what they charge to be an inordinate surplus above the needs of the company for its working capital. I *Page 268 
do not see how I can say so, under the language to be found in the opinion of Mr. Justice Swayze, in Murray v. BeattieManufacturing Co., 79 N.J. Eq. 604, and the authorities therein discussed. There is no question as to the jurisdiction of this court so to do in a proper case, but I do not feel that the necessary facts have been proved herein. In the case just mentioned, Mr. Justice Swayze reiterates the oft-repeated rule that the authority of the directors is absolute so long as they act in the exercise of an honest judgment. In the present case, the testimony of the experts produced was to the effect that a surplus of $195,000, roughly, was not unreasonable for this corporation to hold. The surplus is not composed of cash lying idly in banks, but has been plowed in, and is represented by additions to the business, such, for example, as the manufacturing plant in Newark. It is also significant that, contemporaneously with the establishment of their New Jersey manufactory, there was a change in the business carried on by the company. Prior to that time, it only produced parts of the jewelry into which the same were to go. For example, it did not produce a ring with the setting complete and ready for the jewels to be incorporated in the ring, but only made the setting proper, which had to be fused upon a ring produced by the jobber from another manufacturer. The present business is steadily getting away from that obsolete method while acquiring, in this new field, customers for the complete rings or such other articles of jewelry as may be desired. It was thought prudent to build up a fund sufficient to finance the changes necessary to effectuate manufacturing the new product and tide over losses probable to occur in the transition period. Under these proofs, I cannot say that any dishonesty or fraud has been shown in withholding profits from the stockholders for use as capital. Therefore, under the statute as it exists, I could not substitute my judgment for that of the board, even though it might differ therefrom.
So far as the propriety of the amounts at which the salaries of the individual defendants have been fixed, they all *Page 269 
presented themselves for cross-examination after having outlined the duties incumbent upon them, respectively. There can be no question that they are devoting their entire time to the fortunes of the business, and, without going into a particular description thereof, it may be said that they are carrying on all the affairs of the company, except the physical work being done by the employees under their supervision. In their own testimony, that they have been fair in fixing the remuneration to be received by each, they are supported by the witnesses Haslett, Levy and Kantzmann, all men who have had experience rendering them familiar with the payment of salaries to others in like positions. There is not the weakness in their defense that was animadverted upon by Vice-Chancellor Stevenson in Raynolds v.Diamond Mills Paper Co., supra (at p. 317). I do not feel that I can say that these defendants are overpaid. It is true, as pointed out in the last-mentioned opinion, that these defendants, having fixed their own salaries, the burden is upon them to satisfy the court that the same have been earned. It seems to me, in view of the testimony of their witnesses and themselves, and in the absence of any contrary testimony, that they have completely discharged the burden under which they labored.
I cannot but be sympathetic with the desire of the complainants to receive a regular and sufficient dividend upon their stock, but I think the showing of the company under its present management is rather creditable, when it is recalled that in the ten years of its existence it has passed its dividends but twice, and then during a period of reconstruction, and when it is further borne in mind that, as I have said before, spread over its entire existence, the dividends have averaged eight and one-half per cent. per year, added to which has been the very serious drain of the annuity to Mrs. Blancard, from the payment of which the company is now released forever by her death. Of course, it is to be expected that its condition, under the proofs of the defendants themselves, ought to improve, and if it does not it should be a simple matter for the complainants under another bill to *Page 270 
show the reason therefor, if it shall be due to any unfair, unconscionable or inefficient conduct on the part of the managing officers.
With its answer the defendant corporation filed a counter-claim against the complainant William Blancard for the sum of $2,510, for moneys borrowed by that complainant from the company. This complainant admits that he borrowed the sum of $3,500 on September 9th, 1920, and has paid $1,000 thereof, leaving $2,500 due, with interest, on balances from the respective dates. On a preliminary motion to strike out the counter-claim, an order was advised by Vice-Chancellor Fielder, refusing to do so, and leaving the costs of that motion to abide the final event.
I will advise a decree in accordance with the foregoing.