### PEOPLE OF COLORADO ex rel. FRASER v. GREAT WESTERN SUGAR CO.

Circuit Court of Appeals, Eighth Circuit.
December 1, 1928.

No. 8243.

· Everett Bell and Page M. Brereton, both of Denver, Colo., for appellant.

Caldwell Martin and Gerald Hughes, both of Denver, Colo. (Clayton C. Dorsey and William A. Jackson, both of Denver, Colo., on the brief), for appellee.

Before VAN VALKENBURGH and COTTERAL, Circuit Judges, and REEVES, District Judge.

VAN VALKENBURGH, Circuit Judge. This is a suit by the appellant against the Great Western Sugar Company, appellee, to recover the sum of $23,500, with interest. It was instituted originally by filing in the district court, in the city and county of Denver, Colorado, a petition for alternative writ of mandamus against the sugar company, its officers and directors. The cause was removed to the District Court of the United States for the District of Colorado, upon the ground of diversity of citizenship, and that the proceeding was essentially a suit of a civil nature for the recovery of money. A motion to remand was denied. To this action of the court no error has been assigned. Demurrers to the petition were sustained, and a decree entered in favor of defendant, appellee herein.

The Great Western Sugar Company was organized in 1905, under the laws of the state of New Jersey, with an authorized capital

stock of $20,000,000, of which $10,000,000 was preferred and $10,000,000 common. In 1906 the capital was increased to $30,000,000; $15,000,000 thereof preferred, and $15,000,000 common. In 1922 the articles of incorporation were again amended; the par value of the common stock being changed from $100 par value to $25 par value; that of the preferred stock remaining at $100. July 28, 1927, by a further amendment, the par value of the common stock was changed from $25 per share to no par value. Three shares of the no par value common stock were issued to each shareholder of the said $25 par value common stock in exchange therefor. After this last amendment the number of shares of all kinds of stock authorized to be issued, and issued by the company, were 150,000 shares preferred stock, of the par value of $100 each, and 1,800 shares of common stock, of no par value.

Article IV of the articles of incorporation of said company is as follows:

"The amount of the total authorized capital of the corporation shall be thirty million dollars ($30,000,000), represented by one million nine hundred fifty thousand (1,950,000) shares of capital stock of which one hundred fifty thousand (150,000) shares shall be preferred stock of the par value of one hundred dollars ($100.00) each, and the remaining one million eight hundred thousand (1,800,000) shares shall be common stock without nominal or par value. Each holder of such preferred stock shall be entitled to one vote for each share of such preferred stock held by such stockholder, and each holder of such common stock shall be entitled to one-twelfth ($\frac{1}{12}$) of one vote for each share of such common stock held by such stockholder.

"The holders of such preferred stock shall be entitled to receive from the surplus or net profits arising from the business of the corporation a fixed yearly dividend of seven per centum (7%) payable quarterly on the second days of January, April, July and October in each year, before any dividends shall be set apart or paid on the said common stock.

. "Should the surplus or yearly profits arising from the business of the corporation prior to any dividend day be insufficient to pay the dividend upon the preferred stock, such dividend shall be payable from future profits; and no dividend shall at any time be paid upon common stock until the full amount of seven per centum (7%) per annum up to that time upon all the preferred stock shall have been paid or set apart. The

holders of preferred stock shall be entitled to no dividends from the surplus or net profits of the company beyond the seven per centum (7%) aforesaid; but in case of liquidation or distribution of assets of the corporation the holders of preferred stock shall be paid the par amount of their preferred shares before any amount shall be payable to the holders of the common stock, and after the payment of an equal amount to be distributed pro rata among the holders of the common stock the remainder of the assets and funds shall be distributed one-half ($\frac{1}{2}$) thereof ratably among all the preferred shareholders and the remaining one-half ($\frac{1}{2}$) thereof ratably among all the common shareholders, without preference."

As stated in the brief of appellant:

"The articles of incorporation of the company, when originally adopted on the organization of the company in 1905, were identically the same as in 1906, 1922 and 1927, except as to increase in 1906 of capital stock from $20,000,000 to $30,000,000, and making common stock $25 per share in 1922 and no par in 1927."

Prior to February 28, 1926, the appellee company had declared, and paid to the holders of preferred stock, the annual dividend of 7 per cent. provided in the articles of incorporation, and also dividends to the holders of common stock. No dividends of any nature were in arrears. On February 28, 1926, the company had accumulated surplus and undivided profits, including working capital, and characterized by appellant as capital assets, the sum of $39,001,342.77 in excess of all liabilities, including its liability on its capital stock authorized and issued. It is alleged that the net income of the Great Western Sugar Company, for the fiscal year ending February 28, 1927, was $3,365,713.27. During that fiscal year the company paid preferred stockholders the regular annual dividend of 7 per cent. on their preferred stock, amounting to $1,050,000, leaving a balance of $2,315,713.27, which was distributed as dividends to the common stockholders. In addition thereto the board of directors, during the fiscal year ending February 28, 1927, voted, and paid, as a dividend, to the common stockholders out of the accumulated surplus of $39,001,342.77, the amount of $2,484,286.73. Since that date, as alleged, appellee has paid, as a dividend, to the common stockholders out of the remaining balance of said accumulated surplus, the additional sum of $3,660,000, or a total of $6,144,286.73.

Appellant is the owner and holder of 235

shares of the preferred stock, of the par value of $100. His claim arises out of his interpretation of article IV of the articles of incorporation hereinabove set forth. It is his contention that these payments to the common stockholders of dividends out of the undistributed accumulated surplus, which he characterizes as capital assets, amount to a distribution of assets of the corporation under the terms of said article IV, and that when such distribution takes place the holders of preferred stock shall be paid the par amount of their preferred shares before any amount shall be paid to the holders of the common stock, and that, after the payment of an equal amount pro rata to the holders of the common stock, the remainder of the assets and funds of the company must be distributed one-half ratably among the preferred shareholders and one-half ratably among all the common shareholders. This is the gist of the action brought originally in the form of mandamus against the officers and directors of the company. It will be seen that the case turns upon the interpretation of this article of the charter as construed in the light of the laws of New Jersey, under which this company was organized, and the general law applicable to corporations of this nature.

Section 18 of the General Corporation Act of New Jersey (Comp. St. N. J. 1910, p. 1608, as amended by P. L. N. J. 1926, p. 533, § 6), among other things provides:

"Every corporation organized under this act shall have power to create two or more kinds of stock, any of which may be stock with par value or stock without par value, with full, limited or no voting powers, of such classes, with such designations, preferences, relative, participating, optional or other special rights, qualifications, limitations or restrictions thereof, as shall be stated and expressed in the certificate of incorporation or in any certificate of amendment thereof, but no stock with par value shall be created entitling the holders thereof to receive preferred dividends thereon in excess of eight per centum per annum."

Section 30 (Comp. St. N. J. 1910, p. 1617), under the heading "Unlawful Reductions of Capital and Unlawful Dividends," contains this provision:

"The directors of a corporation shall not make dividends except from its surplus, or from the net profits arising from the business of such corporation, nor shall it divide, withdraw, or in any way pay to the stockholders or any of them, any part of the capital stock of such corporation, or reduce its capital stock except as authorized by law."

Section 47 (Comp. St. N. J. 1910, p. 1629, as amended by P. L. N. J. 1926, p. 541, § 14) makes the following provision respecting dividends and working capital:

"Unless otherwise provided in the original or amended certificate of incorporation, or in a by-law adopted by a vote of at least a majority of the stockholders, the directors of every corporation organized under this act shall have power in their discretion from time to time to fix and to vary the amount of the working capital of the corporation and to determine, what, if any, dividends shall be declared and paid to stockholders out of its surplus or net profits. Dividends may be declared and paid in capital stock with or without par value."

The only section of the petition which undertakes to describe the nature of the accumulated surplus from which these dividend payments were made is paragraph 8, which reads as follows:

"That prior to the 28th day of February, A. D. 1926, the respondent company—after declaring and paying to the holders of preferred stock the annual dividend of 7 per cent. as provided for in the articles of incorporation, and also reasonable dividends voted and paid to the common stockholders annually—had made certain annual additions, out of its annual earnings, to the capital of the company to increase its future profit earning capacity and create a greater security for a constant payment of dividends to preferred stockholders, amounting to the sum of $39,001,342.77, and had on hand on said date of February 28, 1926, the said amount of $39,001,342.77 as accumulated capital assets, over and above all liabilities, including its liability on all its capital stock authorized and issued; that is, that the board of directors of the company, after the declaration and payment of annual dividends for the preceding current years on both preferred and common stock, proceeded to and did place and set aside such current annual undivided earnings, aggregating as aforesaid, on February 28, 1926, the sum of $39,001,-342.77 as capital assets, for the purpose of increasing the company's future earning capacity, and creating a greater security for a constant payment of dividends to preferred stockholders, as well as to insure the permanent prosperity and stability of the respondent company."

It is apparent from this statement that the company had through past years earned this

considerable sum of money in excess of what it had paid out in dividends, taxes, operating expenses, and fixed charges. It was retained for the purpose of being used as working capital, or otherwise for the purpose of increasing the company's earning capacity, if needed, and for creating a greater security for the payment of dividends and for the protection of the credit of the corporation. It had never been dedicated to corporate uses, whereby it became capital, within the meaning of that term pertinent to this discussion. The distinction between fixed capital and surplus net profits or earnings is obvious.

"Undistributed profits, or surplus in any form, may be invested or employed in the business of the corporation without thereby becoming 'capital' * * * and until such profits are effectually and irrevocably dedicated to corporate uses through the processes of a stock dividend, they do not pass beyond the control of the directors nor cease to be available for distribution to those to whom they might have been originally allotted as cash dividends." Smith v. Dana, 77 Conn. 543, 60 A. 117, 69 L. R. A. 76, 107 Am. St. Rep. 51.

It is further held that, where the profits so employed for a time in the business of the corporation have finally been converted into money and made payable to stockholders in the form of a cash dividend, such a transaction by a solvent and prosperous corporation is in no proper sense a liquidation or surrender of a portion of its capital.

"Money earned by a corporation remains the property of the corporation, and does not become the property of the stockholders, unless and until it is distributed among them by the corporation. The corporation may treat it and deal with it either as profits of its business, or as an addition to its capital. Acting in good faith and for the best interests of all concerned, the corporation may distribute its earnings at once to the stockholders as income; or it may reserve part of the earnings of a prosperous year to make up for a possible lack of profits in future years; or it may retain portions of its earnings and allow them to accumulate, and then invest them in its own works and plant, so as to secure and increase the permanent value of its property." Gibbons v. Mahon, 136 U. S. 558, 10 S. Ct. 1058, 34 L. Ed. 525.

"The term 'surplus,' as employed in corporate finance and accounting, designates an account on the books, representing the net assets of the corporation in excess of all liabilities, including its capital stock." Edwards v. Douglas, 269 U. S. 204, 46 S. Ct. 85, 70 L. Ed. 235.

And dividends may be paid from current earnings or accumulated surplus. Lynch v. Hornby, 247 U. S. 339, 38 S. Ct. 543, 62 L. Ed. 1149; Moran v. United States Cast Iron Pipe & Foundry Co., 95 N. J. Eq. 389, 123 A. 546.

"Where a corporation has sufficient money or property with which to pay a proposed dividend without in any manner or to any extent impinging on its moneyed capital, whether such dividend shall be declared and paid and the amount, time and terms, are matters solely for the determination of the directors acting within their discretion." Hyams v. Old Dominion Copper Mining Co., 82 N. J. Eq. 507, 89 A. 37.

█ The power of directors is absolute if they act in the exercise of an honest judgment, and earnings of prosperous years may help out the deficiencies of other years. Murray v. Beattie Mfg. Co., 79 N. J. Eq. 604, 82 A. 1038. And dividends may be declared where there are profits above the actual assets with which the corporation began business (Goodnow v. American Writing Paper Co., 73 N. J. Eq. 692, 69 A. 1014), and this is true although the total assets may not exceed the debts and the nominal share of capital. In the granting of dividends the directors are vested with a wide discretion, subject to intervention for improper refusal. Stevens v. United States Steel Corporation, 68 N. J. Eq. 373, 377, 59 A. 905. Such dividends need not be declared out of the profits for the current year. Bassett v. United States Cast Iron Pipe & Foundry Co., 74 N. J. Eq. 688, 70 A. 929. A surplus not dedicated to corporate uses as capital is carried as the property of the corporation, until such time as the directors may decide as to its disposition by way of distribution or otherwise. Robertson v. De Brulatour, 188 N. Y. 301, 310, 80 N. E. 938. And when the property of a corporation exceeds the sum limited for its capital in its charter, the excess is surplus, which may be divided among the stockholders. Williams v. Western Union Telegraph Co., 93 N. Y. 162.

The general rule is thus well summarized in 14 Corpus Juris, 802:

"The terms 'net profits' or 'surplus profits' may be defined as what remains after deducting from the present value of all the assets of a corporation the amount of all liabilities, including the capital stock, in other words, that which remains as the clear gain of a corporation, after deducting from its income all

the expenses incurred and losses sustained in the conduct and prosecution of its business. Hence a dividend is lawful, if, at the time of its declaration and payment, the corporation is solvent or has assets in excess of the amount of its debts and capital stock. And it makes no difference whether such surplus assets have been carried on the books of the corporation as surplus, or as segregated assets, or in a special fund account, or otherwise. Dividends may be paid from surplus accumulated out of profits of previous years, although there has been no actual profits for the year in which dividends are paid. The actual value of the assets with which the corporation began business is to be deducted and not the nominal share capital, and the business of a corporation is to be viewed as a unit in determining whether or not there are net profits."

It is evident from the foregoing citations, and from many others which might be adduced to the same effect, that the sum accumulated by appellee in the way of surplus or undivided profits, was subject to the control of the directors and might be applied to the payment of dividends at any time when such payment would not impair the capital of the corporation.

■ But counsel for appellee seriously contend that under the provisions of article IV of the charter the payment of such dividends from this fund amounts to a distribution of assets of the corporation within the meaning of that section, in which case appellee is entitled to be paid the par amount of his preferred shares before any amount shall be payable to the holders of common stock, and thereafter to his ratable share of one-half the remainder of assets. It is true that the charter contract covers the rights of the several classes of stock. Lyman v. Southern R. Co., 149 Va. 274, 141 S. E. 240; Equitable L. A. Society v. Union Pac. R. Co., 212 N. Y. 360, 106 N. E. 92, L. R. A. 1915D, 1052.

"The main object of the contract, or the purpose which the parties sought to accomplish, is to be considered in ascertaining their intention, and particular parts of the contract must be so construed as to harmonize with such purpose, if possible." 13 C. J. 540, par. 509.

"In arriving at the intention of the parties, where the language of a contract is susceptible of more than one construction, it should be construed in the light of the circumstances surrounding them at the time it is made, it being the duty of the court to place itself as nearly as may be in the situation of the parties at the time so as to view the circumstances as they viewed them, and so to judge of the meaning of the words and the correct application of the language of the contract." 13 C. J. 542, par. 514.

■ Appellant, with others, was constituted a preferred stockholder in the usual and accepted sense. The charter does not contain the common provision for the retirement of such stock within a prescribed period, but limits the annual dividend to 7 per cent., and expressly provides that the holders of preferred stock shall be entitled to no dividends from the surplus or net profits of the company beyond the 7 per cent. aforesaid. The law of New Jersey prohibits the creation of preferred stock entitling the holders thereof to receive preferred dividends in excess of 8 per centum. In no case then, while the corporation is a going concern, can this provision of the charter be evaded by payments to preferred stockholders out of surplus or net profits in excess of 7 per centum. The preference right accorded to such stockholders is a valuable concession and limits their participation in the assets of the corporation except in case of dissolution or liquidation. It is our judgment that the words "liquidation or distribution of assets," as employed in article IV of the charter, refer to a case where the corporation is dissolved or its entire assets are liquidated through some form of merger or reorganization, as was the case in Continental Insurance Co. et al. v. United States, 259 U. S. 156, 42 S. Ct. 540, 66 L. Ed. 871. That such was the effect in that case appears from the language of the opinion:

"What is to be done is in fact and law a liquidation of the assets of the Old Reading Company." Loc. cit. 177 [42 S. Ct. 547]. "The preferred and common stocks have equal voting power and in liquidation or dissolution of the corporation will share equally in pro rata distribution of assets. * * * Our conclusion that the claim on behalf of the common stockholders is invalid is based on the construction of the words of the agreement itself and hardly needs authority to sustain it. It is, however, in accord with the general common-law rule that stockholders common and preferred share alike in the assets of a liquidating corporation, if the preference is only as to dividends." Loc. cit. 180, 181 [42 S. Ct. 548].

It is true that appellant demands only the sum of $23,500, the amount of the par value of his stock, but if the provision of

article IV, as he interprets it, be set in motion it cannot stop until, after the payment of that sum, the holders of common stock receive a like amount and thereafter the remainder of the assets and funds of the corporation be distributed ratably to the last dollar among all shareholders, common and preferred. Such a procedure would involve the absurdity of working a dissolution of the corporation through impairment of its capital stock and the exhaustion of its assets whenever the board of directors might see fit to exercise their undoubted power to pay to the holders of common stock dividends out of accumulated net profits or surplus. Appellant lays stress upon the use of the disjunctive as distinguishing "distribution of assets" from "liquidation." But it is very evident under the common sense rule of construction, to which we have adverted, that the words "distribution of assets" and "liquidation" mean one and the same thing.

"To prevent an absurd or unreasonable result, the word 'and,' used in a contract, may be read 'or,' or vice versa." Manson v. Dayton (C. C. A. 8) 153 F. 258. This language is in accord with the rule of statutory construction recognized by text-writers and by courts generally.

It is quite evident to our minds that to effect the main object of the contract, the intention of the parties, and the purpose which they sought to accomplish, the provision in article IV, "in case of liquidation or distribution of assets" refers to a final dissolution or winding up of the affairs of the corporation whereby it ceases to exist as a going concern in its present corporate form.

There has been no unreasonable application of the undivided profits and surplus of the corporation to the payment of dividends, and none in excess of the sound discretion of the directors. Neither the future profit earning capacity of the corporation nor security for a constant payment of dividends to preferred stockholders has been impaired. It still has on hand ample funds to insure its permanent prosperity and stability. Appellant has received in full the dividends guaranteed by the charter contract, and we perceive no ground for apprehension on his part that the corporation will not continue to meet its charter obligations in that respect. To more than this appellant, and those similarly situated, are not entitled, until and unless the situation arises for which the charter makes provision. It follows that the decree below was right, and it is affirmed.