Edward SCHENKER and David Schenker, on behalf of themselves and all other Stockholders of the Cumulative Preferred Stock without par value $3.50 Series and Cumulative Preferred Stock without par value $4.50 Series of E. I. du Pont de Nemours & Company Incorporated, Plaintiffs-Appellants,

v.

E. I. du PONT de NEMOURS & COMPANY, Incorporated, Defendant-Appellee,

and

Walter S. Carpenter, Jr., Walter J. Beadle, Donaldson Brown, et al., Defendants.

No. 204, Docket 28438.

United States Court of Appeals Second Circuit.

Argued Feb. 17, 1964.

Decided March 19, 1964.

Certiorari Denied June 22, 1964. See 84 S.Ct. 1922.

David Schenker, New York City, for plaintiffs-appellants.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendant-appellee, E. I. du Pont de Nemours & Co.; John E. F. Wood, Philip C. Scott, and Malcolm H. Bell, New York City, of counsel.

Before SWAN, SMITH and MARSHALL, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal from a judgment dismissing the complaint in an action brought by plaintiffs on behalf of preferred stockholders of E. I. du Pont de Nemours & Company, Incorporated (hereafter called du Pont) seeking to set aside a plan of divestiture adopted by the du Pont board of directors on May

31, 1962 with respect to 63,000,000 shares of General Motors common stock owned by du Pont. The plan voted by the directors provided for an initial distribution of 23,000,000 shares on July 9, 1962 and distribution of the remaining 40,-000,000 shares by February 1965, to holders of the du Pont common stock.[1] This disposition of its investment in General Motors stock will leave du Pont with unimpaired capital, with a surplus of more than one billion dollars, and with no change in the commercial activities which constitute its main business.

Shortly after announcement of the plan, plaintiffs brought the present suit to protect the interests of du Pont preferred shareholders. There are two series of preferred stock. The first series, issued in 1937 and 1939, with an annual dividend of $4.50 per share consists of 1,688,500 shares. The second series, issued in 1947, consists of 700,000 shares with a $3.50 dividend. In each series the shares have a stated value of $100 each. They are not entitled to vote, except on limited conditions, but are entitled to receive cumulative dividends before any dividend can be paid on du Pont common stock. They are also entitled to payment of the stated value upon involuntary liquidation and to payment of the redemption value upon voluntary liquidation of the corporation. The redemption price is $120 per share for the 4.50 series, and $103 per share for the 3.50 series. Du Pont can call the preferred at these prices. Plaintiffs hold 1500 shares of the 3.50 series.[2]

They are residents of New York and the defendant is a Delaware corporation licensed to do business in New York. The complaint was filed on June 21, 1962. It alleged three causes of action: the first sought an injunction restraining du Pont from distributing the 63,000,000 shares of General Motors,[3] the second sought to compel du Pont to call or retire its preferred stock, and the third was a derivative suit against individual defendants, which was dismissed before trial for failure to serve the defendants. Du Pont filed its answer September 14, 1962. The case was tried November 30 on a joint stipulation of facts, and judgment dismissing the complaint was entered June 27, 1963.

■ The court below made forty-four findings of fact and ten conclusions of law. Since there was no oral testimony, the appellants contend that we are free to make our own findings of fact. So we are. However, a careful review of the record has not caused us to differ with any of the relevant findings made by Judge Palmieri. We also agree with his conclusions of law and the authorities cited to support them.

■■ Nearly one half of appellants' brief is devoted to establishing that the directors of du Pont owe a fiduciary duty of fair treatment to holders of the preferred stock. This is conceded by the appellee and was recognized by the trial judge, as it is by us. The directors also owe a fiduciary duty of fair treatment to holders of du Pont common stock. Judge Palmieri found no breach of duty to ei-

1. In United States v. E. I. Du Pont De Nemours & Co., 353 U.S. 586, 77 S.Ct. 872, 1 L.Ed.2d 1057 (June 3, 1957) the Court held that defendant violated § 7 of the Clayton Act by ownership of General Motors common stock and remanded the cause to the United States District Court for the Northern District of Illinois, to determine the relief appropriate "to eliminate the effects of the acquisition offensive to the statute." From the decree entered on remand the United States appealed. The Court then directed complete divestiture and required du Pont to file a proposed judgment providing for complete divestiture within 10 years. United

States v. E. I. Du Pont De Nemours & Co., 366 U.S. 316, 330, 81 S.Ct. 1243, 6 L.Ed.2d 318.

2. Edward Schenker holds 1,000 shares, part of which he acquired in October 1957, about four months after the first Supreme Court decision of June 3, 1957.
   David Schenker holds 500 shares, part of which he acquired in November 1960.

3. A motion for a temporary injunction was denied July 3, 1962. This was affirmed two days later. Schenker v. E. I. Du Pont De Nemours & Co., 2 Cir., 304 F.2d 880.

ther class of stockholders. We agree. The divestiture order required action by the directors. The action taken was a reasonable exercise of business judgment, and in view of the assets remaining to protect the preferred shareholders caused them no injury. At the end of 1961 du Pont's net assets other than its General Motors investment had a book value of 7.2 times the stated value of all outstanding preferred stock. At the end of 1947, when the last series of preferred was issued, net assets, including the General Motors stock, were only about 3.5 times the stated value of the preferred. The income figures are comparable. In 1947 total du Pont income was 10.8 times as great as the preferred dividend requirement; since 1954 du Pont income from sources other than the General Motors stock has never been less than 22.5 times the preferred dividend. In 1961 this income was 27 times the preferred requirements. And there was uncontradicted expert opinion that the preferred would still be rated as a triple A investment.

The final contention to be considered is that the distribution of the General Motors stock constitutes a voluntary liquidation within the meaning of the charter provision, Article Fourth, Section V: "In the event of *any* [italics added by appellants] liquidation or dissolution or winding up of the corporation, whether voluntary or involuntary," the holders of preferred shall be entitled to be paid the amounts fixed for the respective series before anything is paid to holders of common stock. The trial court held the plan of divestiture was not a "liquidation." We agree. It is obvious to us that "liquidation" or "dissolution" as used here must at least approximate a "winding-up" of the corporation's main business. See Lafayette Trust Co. v. Beggs, 213 N.Y. 280, 283–284, 107 N.E. 644; Colorado ex rel. Fraser v. Great Western Sugar Co., 8 Cir., 29 F.2d 810. This conclusion is fortified by Section IX of the charter which provides that " * * the assets and funds of the corporation remaining, after the payments have been made to the holders of the preferred

stock, as provided in Section V hereof, shall be divided and paid to the holders of the common stock according to their respective shares." This section makes even more certain the inference that a payment to the preferred under Section V was to be undertaken only in the context of a complete distribution of all corporate assets.

The judgment is affirmed.